**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Louis Ray SMITH, Defendant-Appellant.**

**No. 72–1939.**

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1973.

---

Herbert P. Sterling, Tampa, Fla. (Court-Appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Claude H. Tison, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before RIVES, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Louis Ray Smith was convicted below of forging endorsements on a United States Treasury check in violation of 18 U.S.C.A. § 495. He appeals on double jeopardy grounds. We affirm.

Originally, in November 1970, appellant was charged in a two-count indictment with (Count I) obstructing the mail in violation of 18 U.S.C.A. § 1708 and (Count II) uttering a forged United States Treasury check. The government's theory of the facts was that appellant removed from another's mailbox a Social Security check for $181.63, forged the names of the intended payees on the check, and cashed it at a drive-in bank window. At trial the prosecution introduced evidence to show that the check had been mailed; that the intended payees had not received the check or endorsed it or authorized anyone to endorse it; that the license number of the automobile driven by the person who cashed the check at the drive-in bank window was, as noted by the bank teller, the license number of appellant's automobile; and that a latent fingerprint on the check corresponded to one of appellant's fingerprints. In addition, a handwriting expert testified that it was highly probable that appellant had authored the endorsements on the check. Testifying in his own defense, appellant denied endorsing or cashing the check and offered an innocent explanation of the government's evidence. He said that his wife's children had brought the check to him with the envelope already torn open; that he had, after ascertaining that he was not the intended payee, directed its return to the proper mailbox; that he was normally at work at the time of day when the check was cashed; and that his wife and brother-in-law sometimes used his automobile while he was at work. In cross-examining the bank teller, defense counsel focused attention on the teller's inability to identify the person who cashed the check. After considering the evidence, the jury returned a verdict of guilty as to Count I, obstructing the mail, and not guilty as to Count II, uttering a forged government check. Appellant moved for

a new trial on Count I, and the motion was granted.

The government then obtained, in February 1972, a superseding two-count indictment. Count I of the superseding indictment charged obstruction of the mail and was identical to Count I of the original indictment; new Count II, however, charged appellant with forging the check in violation of a different paragraph of § 495, rather than uttering it. New Count I, for obstructing the mail, was dismissed, so that only the forgery count remained. Appellant moved to dismiss the forgery count, contending that the forgery prosecution was a second prosecution for the "same offence" within the meaning of the Double Jeopardy Clause of the Fifth Amendment, since he had previously been acquitted of uttering the check. After this motion to dismiss was denied, 339 F.Supp. 1383, appellant stipulated that the facts alleged in the indictment were true and judgment of conviction of forgery was entered.

On this appeal from the forgery conviction appellant continues to press his Double Jeopardy contention. He argues that since the government had already unsuccessfully litigated the issue of appellant's forgery of the check in the trial for uttering a forged check, it could not properly seek to establish this fact again in a forgery prosecution. To support his position appellant relies on the collateral estoppel doctrine which the Supreme Court held to be a part of the constitutional double jeopardy concept in Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The government agrees that *Ashe* controls but argues that it requires affirmance.

■ *Ashe* held the doctrine of collateral estoppel to be a part of the constitutional guarantee against double jeopardy. The Court restated the doctrine as follows:

[Collateral estoppel] means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot

again be litigated between the same parties in any future lawsuit.

397 U.S. at 443, 90 S.Ct. at 1194. Application of the doctrine requires an inquiry into the factual issues on which the jury's verdict may rationally have depended in the prior trial:

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

[footnote omitted.]

397 U.S. at 444, 90 S.Ct. at 1194. Hence, only if the jury could not rationally have based its verdict on an issue other than the one the defendant seeks to foreclose does the doctrine preclude the subsequent prosecution.

■ In terms of this case the question is, then, whether the jury could have rationally based its verdict of acquittal in the trial for uttering a forged check on an issue other than forgery. Having carefully reviewed the record, we conclude the jury could reasonably have based its verdict on another issue —that of identity. In order to "utter" a check, one must cash it or otherwise put it into circulation. In the uttering trial the bank teller could not identify appellant as the person who cashed the check. In view of the teller's failure to identify appellant and appellant's testimony that others sometimes drove his automobile, it is rationally possible, and even probable, that the jury had a reasonable doubt as to the identity of the check casher and that it voted to acquit on the basis

of this identity issue rather than the forgery issue. Since the jury may have based its verdict on an issue other than forgery, the collateral estoppel doctrine did not preclude the relitigation of the forgery issue or the subsequent forgery prosecution.

■ A question remains whether the collateral estoppel doctrine marks the outer limits of the constitutional double jeopardy guarantee, or whether double jeopardy bars prosecution for a given offense after the defendant's acquittal for the very same offense based on the same alleged acts. *See, e. g.,* Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The "same evidence" test of "same offence," which was current before *Ashe,* broadened the double jeopardy concept beyond this narrow rule, *see* Ashe v. Swenson, 397 U.S. 436, 451–52, 90 S.Ct. 1189, 1199, 25 L. Ed.2d 469 (1970) (Brennan, J., concurring), and the incorporation of the collateral estoppel doctrine in *Ashe* expanded it further. Justice Brennan, concurring in *Ashe,* proposed an even broader test—the "same transaction" test—for determining when a subsequent prosecution is for the "same offence" within the meaning of the Double Jeopardy Clause:

> In my view, the Double Jeopardy Clause requires the prosecution, except in the most limited circumstances, [footnote omitted] to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction.

397 U.S. at 453–454, 90 S.Ct. at 1199. Justices Douglas and Marshall endorsed Justice Brennan's view, but Justice Harlan expressly disavowed it. A majority of the Court has neither accepted nor rejected it. Under these circumstances we decline to adopt it here. We agree with the Third Circuit's conclusion in United States ex rel. Brown v. Hendrick, 3d Cir. 1970, 431 F.2d 436, 440:

> [T]he fact remains that the "same transaction" test represents the views

of only three Justices of the Suprem Court. The view of any Justice is entitled to consideration and respect, but we cannot conclude that we should go beyond the "collateral estoppel" test in deciding this case when the "same transaction" test failed to command a majority of the Court in the very case in which it was advanced. It is simply not yet the law which we as an inferior appellate court should follow.

*Accord,* Wingate v. Wainwright, 5th Cir. 1972, 464 F.2d 209; United States v. Fusco, 7th Cir. 1970, 427 F.2d 361, 362.

The district court properly decided that the acquittal for uttering did not bar the prosecution for forgery on double jeopardy grounds.

Affirmed.