**Ellis Kennedy DOUTHIT, Petitioner-Appellant,**

**v.**

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

**No. 74–4204.**

United States Court of Appeals, Fifth Circuit.

Oct. 15, 1976.

Charles W. Tessmer, Ronald L. Goranson, Dallas, Tex., for petitioner-appellant.

Max P. Flusche, Jr., Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Appeal from the United States District Court for the Western District of Texas.

Before BROWN, Chief Judge, and TUTTLE and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is an appeal from a District Court order denying Ellis Kennedy Douthit's petition for a Writ of Habeas Corpus. Petitioner claims that the State of Texas is collaterally estopped, under the principles announced in *Ashe v. Swenson,* 1970, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, from trying him for assault with intent to com-

mit rape in Travis County, Texas, after his acquittal in a jury trial of rape of the same woman in Williamson County, Texas. We agree that *Ashe* controls our disposition of this petition, but we are convinced that *Ashe* does not preclude defendant's second trial and conviction. We therefore affirm the District Court.

The facts underlying this appeal took place in Hays, Travis, and Williamson Counties in the State of Texas. These three counties are situated in a continuous vertical line, somewhat to the southeast of the geographical center of the state. Hays County is the southernmost of the three counties and envelops the city of San Marcos, Texas. Bordering Hays County, almost directly north and a little to the east, lies Travis County, where the city of Austin, Texas is located. Finally, bordering Travis County almost directly to the north and a little to the east lies the northernmost of the three counties, Williamson County, where Georgetown, Texas is located.

At approximately 11:00 p.m., September 6, 1969, the prosecutrix, a married woman twenty-two years of age who had been visiting her parents, was returning to their room in the Chariot Inn Motel in Austin, Texas (Travis County) with some hamburgers and cigarettes for them. Just as she turned into the motel driveway, a car behind her flashed a red light. She pulled over and parked. The Petitioner, who was the driver of the other car, identified himself as Sergeant Reed, and showed her a badge and identification card. He told her she had made an illegal turn, that he had a pickup on a car like hers, and that he wanted to talk to her. Petitioner told her to leave her hamburgers, collect her keys and purse, and get into the car.

After the prosecutrix entered Petitioner's car, he told her he wanted to talk to her husband so they could bring the matter to a close without taking her to jail. Petitioner did not turn at her house, but turned off and drove down a gravel road. While still in Travis County, he stopped, turned on the inside light and placed a gun to her neck. He told her that he had killed a policeman,

that killing her would make no difference and that he needed a hostage. He tied her hands behind her and tied her ankles. Petitioner then told prosecutrix that he needed to hide the car in a safe place and asked her where he could do so. He told her that she would not be hurt if she followed his instructions.

Prosecutrix directed Petitioner to drive south toward Wimberley, Texas, where she and her husband had once lived. On the way to Wimberley, he turned onto a side road outside San Marcos, Texas (Hays County) and stopped. He untied her hands and tied her left arm to her left leg. Petitioner then smoked a cigarette, drank a beer and took some pills. Soon after, they left this spot, because he said it was too close to the highway. Still in Hays County, Petitioner drove into a field and stopped behind a tree, untied her ankles and left hand, but then tied her left leg to something under the seat. He smoked, drank more beer and consumed more pills which he told her were dexadrine. This, along with some conversation, lasted about an hour.

Petitioner then took off his shirt, saying his shoulder hurt, and told prosecutrix to rub it. After smoking another cigarette, he told her to remove her dress. When she hesitated, he got angry, put the gun to her stomach and told her she had better do as he said. He had her completely undress and then he undressed. Then Petitioner forced her to perform oral sodomy upon him. The prosecutrix tried to pull away and began crying, but he held her head down. Petitioner then forced her to have sexual intercourse with him. After reaching a climax, the Petitioner had another cigarette and forced her again to perform oral sodomy. After a few minutes of this, he forced her into anal intercourse. She testified that she was in constant fear of her life and would not have otherwise complied with his demands.

At around 6:00 or 7:00 a.m., September 7, 1969, they left this location and went to a motel in San Marcos, Texas (still in Hays County). Again, Petitioner had sexual in-

tercourse with prosecutrix. The testimony shows that, while in this motel, *for the first time since her abduction at gun point the night before*, prosecutrix possibly had some opportunities to escape or seek help.

They stayed at the motel in San Marcos, Texas (Hays County) until about 2:30 p.m., September 7, 1969, when they left and drove north to the Austin Municipal Airport (Travis County) where the Petitioner exchanged the rental car he had been driving for his own. Here, too, prosecutrix may have had opportunities to escape or seek help.

After switching cars, the Petitioner drove north again to a motel in Georgetown, Texas (Williamson County), where they again had sexual relations. Prosecutrix had opportunities to escape or to seek help, while at this motel, also.

Finally, around 9:00 p.m., September 7, 1969, the Petitioner drove prosecutrix south to Austin, Texas (Travis County), where he let prosecutrix out of the car. She then went to the apartment of some friends, where the police were called.

On May 12, 1970, Petitioner was tried by the State of Texas for the rape of prosecutrix in Williamson County. Despite the limitation in the indictment to rapes occurring in Williamson County, the prosecutor introduced evidence of the alleged criminal acts in all three counties. Petitioner's main defense was that the prosecutrix gave her consent to the rapes.[1] In attempting to establish consent, Petitioner argued (i) that prosecutrix had several opportunities to escape or to seek help, which she passed up in Hays County, Travis County, and Williamson County;[2] (ii) that prosecutrix failed to put up a sufficient struggle when Petitioner attacked her; and (iii) that prosecutrix, prior to being released in Travis County, gave Petitioner a sheet of paper containing her address and two phone numbers where she might be reached.

After hearing all the evidence, the jury acquitted Petitioner by a general verdict of not guilty.

After Petitioner's acquittal of rape in Williamson County, he was again tried by the State of Texas on July 13, 1970 for assault with intent to commit rape in Travis County. Again, evidence of the alleged criminal acts in all three counties was placed before the jury.[3] In this trial, however, the jury returned with a general verdict of guilty and sentenced Petitioner to a term of not less than two nor more than 16 years in the state penitentiary.

After his conviction, Petitioner pursued his state appellate court remedies, contending, among others rejected by the Texas Court and not before us, that the doctrine

---

1. Under Texas law, consent is a complete defense to a charge of rape. *See, e. g., Edworthy v. State*, Tex.Cr.App., 1963, 371 S.W.2d 563; *Altman v. Eckermann*, Tex.Civ.App., 1910, 132 S.W. 523. Art. 1183, V.A.C.C.P., which was in effect at the time defendant was tried, provided, in part, that "[r]ape is the carnal knowledge of a woman without her consent obtained by force, threats or fraud . . . ."

Under Texas law, consent is also a complete defense to a charge of assault with intent to commit rape. *See, e. g., Cotton v. State*, 1907, 52 Tex.Cr.R. 55, 105 S.W. 185.

2. There was no evidence that prosecutrix had any opportunities to escape in Travis County or in Hays County before the initial rape occurred.

3. Defense counsel objected to the introduction of any evidence pertaining to events outside of Travis County, but his objection was overruled. App. at 80. The explanation for allowing this extra evidence before the jury was explained by the Judge to the jury in his jury charge:

The defendant, Ellis Kennedy Douthit, is on trial in this court at this time solely on the charge contained in the indictment. The State has introduced in evidence transactions other than the one charged in the indictment in this case, and with reference to these other transactions you are instructed that said evidence was admitted only for the purpose of showing identity, intent, motive or scheme, if it does. You are further charged that you cannot consider said evidence for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if he did, and if you find and believe beyond a reasonable doubt from such testimony that the defendant committed such other acts, you may then consider the same in determining the purpose for which they were introduced and no other purpose.

App. at 165–66.

of collateral estoppel barred his trial and conviction for assault with intent to commit rape after he had been tried and acquitted for rape. The Texas Court of Criminal Appeals rejected Petitioner's arguments and affirmed the conviction. *Douthit v. State*, Tex.Cr.App., 1971, 482 S.W.2d 155. Petitioner's pursuit of state (*Ex parte Douthit*, Tex.Cr.App., 1974, 504 S.W.2d 852) and federal habeas remedies on double jeopardy and sufficiency of the evidence grounds has so far also proved unavailing. This appeal from the Federal District Court denial of a writ of habeas corpus is limited to the sole issue of whether the doctrine of collateral estoppel enunciated by the Supreme Court in *Ashe* prevents defendant's conviction on a charge of assault with intent to commit rape after his prior acquittal on a charge of rape.

In successive terms, the Supreme Court held that the Fifth Amendment guaranty against double jeopardy is enforceable against the states through the Fourteenth Amendment, *Benton v. Maryland*, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, and that collateral estoppel is part of that Fifth Amendment double jeopardy prohibition, *Ashe v. Swenson*, 1970, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469. Collateral estoppel was defined by the Court in *Ashe* to mean "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475. Application of the collateral estoppel doctrine in criminal cases where the jury in the first trial returned a general verdict requires a realistic and practical inquiry into the factual issues on which the jury's verdict may have depended:

> The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579 [68 S.Ct. 237, 240, 92 L.Ed. 180].

*Id.*, at 444, 90 S.Ct. at 1194. *Citing* Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 R.L.Rev. 1, 38–39.

In one of the most recent of the Fifth Circuit cases [4] to apply the *Ashe* collateral estoppel doctrine,[5] Judge Goldberg asserted that application of the doctrine "depends upon whether some issue necessary for the

---

**4.** *See, e. g., Blackburn v. Cross*, 5 Cir., 1975, 510 F.2d 1014; *United States v. McKim*, 5 Cir., 1975, 509 F.2d 769; *Johnson v. Estelle*, 5 Cir., 1975, 506 F.2d 347; *McDonald v. Wainwright*, 5 Cir., 1974, 493 F.2d 204; *United States v. Williamson*, 5 Cir., 1973, 482 F.2d 508; *United States v. Smith*, 5 Cir., 1973, 470 F.2d 1299; *Lynch v. Henderson*, 5 Cir., 1972, 469 F.2d 1081; *Wingate v. Wainwright*, 5 Cir., 1972, 464 F.2d 209; *Middlebrooks v. United States*, 5 Cir., 1972, 457 F.2d 657. *See also United States v. Sarullo*, 6 Cir., 1975, 510 F.2d 1174; *Phillips v. United States*, 4 Cir., 1974, 502 F.2d 227; *Brown v. Hendrick*, 3 Cir., 1970, 431 F.2d 436.

**5.** Prior to the decision in *Ashe*, the Supreme Court in *Sealfon v. United States*, 1948, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180, applied the doctrine of *res judicata* to criminal trials with an effect somewhat similar to the later application of collateral estoppel to criminal trials in *Ashe*. Following the *Sealfon* decision, we phrased the criminal *res judicata* doctrine in the following terms: "A question or issue determined by a prior acquittal may not be relitigated in a criminal proceeding against the same person." *Williams v. United States*, 5 Cir., 1950, 179 F.2d 644, 650, *aff'd on other grounds*, 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758. *See also United States v. Rivero*, 5 Cir., 1976, 532 F.2d 450; *Adams v. United States*, 5 Cir., 1961, 287 F.2d 701; *Yawn v. United States*, 5 Cir., 1957, 244 F.2d 235.

prosecution's case in the second trial has *necessarily* been found for the defendant in the first trial." *Johnson v. Estelle,* 5 Cir., 1975, 506 F.2d 347, 350. [Emphasis supplied]. Thus, he continued, double jeopardy "is not a semanticist's paradise, but is to be determined by applying conventional idioms to the jurors' deliberations. There must be some legal necessity basic to one acquittal, not involved in the next trial, to justify a superceding conviction." *Id.,* at 352.

On this appeal, in view of the overwhelming and uncontroverted proof that Petitioner committed the sexual acts described in the testimony, both parties are in agreement that the only issue on which the first jury's verdict of acquittal could rationally have been based was the consent of the prosecutrix. They are at odds, however, as to what that entails. Petitioner points to cases decided in this [6] and other Circuits [7] seeming to hold that a defendant acquitted of a crime in one trial could not then be tried for a different crime arising out of the same transaction.[8] Emphasizing that the

prosecutor in the first trial introduced evidence of the entire three-county transaction,[9] Petitioner argues that the first jury must necessarily have found that prosecutrix's consent extended to all of defendant's actions throughout the three counties during the entire twenty-two hours. If this is so, Petitioner urges, then *Ashe* requires us to hold that the State of Texas is collaterally estopped from trying defendant on a charge of assault with intent to commit rape in Travis County, since the consent of the prosecutrix in Travis County, already found as an ultimate fact by the jury in the Williamson County case, is a complete defense to that charge.

We conclude that Petitioner misconceives the nature of the test mandated by *Ashe* and the effect of those decisions of this Circuit interpreting *Ashe.* In *Johnson v. Estelle,*[10] *supra,* and *McDonald v. Wainwright,*[11] *supra,* two of the three Fifth Circuit opinions primarily relied upon by Petitioner to support his interpretation of *Ashe,* the state attempted to try the defendant

---

**6.** *Blackburn v. Cross, supra; Johnson v. Estelle, supra; McDonald v. Wainwright, supra.*

**7.** *Phillips v. United States,* 4 Cir., 1974, 502 F.2d 227; *People v. Rolston,* 1974, 51 Mich. App. 146, 214 N.W.2d 894; *Commonwealth v. Dooley,* 1973, 225 Pa.Super. 454, 310 A.2d 690; *State v. Proulx,* 1970, 110 N.H. 187, 263 A.2d 673.

**8.** Petitioner does not seek by this argument to have us apply the "same transaction" test espoused by Justice Brennan in his concurring opinion to *Ashe.* As Petitioner must recognize, that test, being joined in by only three of the Justices, is not the law in this Circuit. *See United States v. Smith,* 5 Cir., 1973, 470 F.2d 1299.

**9.** Although, for the sake of convenience, this opinion sometimes refers to the series of alleged rapes as a continuing "transaction," it should be emphasized that these actions are operationally, physically and geographically separate legal and factual events. *See* notes 14 and 16, *infra.*

**10.** In *Johnson,* the defendant was convicted on a charge of assault with intent to commit rape (Vernon's Ann.Tex.P.C. art. 1162) after he had been acquitted in a previous trial of burglary of the victim's private residence at nighttime with intent to commit rape (Vernon's Ann.Tex.P.C.

art. 1399 & 1400). The same transaction, time and place formed the factual basis for each charge. We overturned the conviction, on the ground that the issues of the identity of the assailant and his intent to rape, which were identical in each crime, were necessarily passed upon in defendant's favor in the first trial.

**11.** In *McDonald,* the defendant was convicted of breaking and entering with intent to commit rape (Fla.Stat. ch. 810, § 1 (1967)) after he had been acquitted on a charge of assault with intent to commit rape (Fla.Stat. ch. 784, § 6 (1967)) and rape (Fla.Stat. ch. 794, § 1 (1967)). We set aside the conviction on the ground that the issue of consent of the victim was an essential ingredient of each crime and by the verdict of not guilty had necessarily been passed on in defendant's favor at the first trial. Although *McDonald* bears a surface similarity to the facts of the case at bar, that similarity is deceiving. In *McDonald,* the action complained of was a single rape occurring at a single time and place. Thus, the issue of the victim's consent was identical in each trial. In this case, there were several rapes, occurring at different times and places, and under variable circumstances, so that there are completely distinct and separate issues of the victim's consent. *See* note 16, *infra.*

for a crime arising out of the same transaction, time, and place that had been involved in a prior acquittal of the defendant on a different statutory charge. Because of this unity of time and place, most of the evidentiary and ultimate fact issues in each alleged crime were identical. In *Blackburn v. Cross,*[12] *supra,* the third Fifth Circuit opinion cited us by Petitioner, although there was not the unity of time and place we found in *Johnson* and in *McDonald,* the evidentiary issue of defendant's identity was, in fact, identical in each alleged crime. Thus, in all three cases, the doctrine of collateral estoppel was correctly applied, because in each case there was "some issue necessary for the prosecution's case in the second trial [which had] necessarily been found for the defendant in the first trial." [13]

The evidence in this case, on the other hand, shows a series of assaults and sexual encounters occurring in three different counties over a twenty-two hour period. These acts are not only separate in the eyes of the law [14]—they are separate in point of fact, being removed from each other by considerable time, distance and circumstances. This distinction is dispositive of this case.[15]

The assault with intent to commit rape in Travis County and the alleged rape in Williamson County are separate crimes involving separate elements. Specifically, the issue of the consent of the prosecutrix to the assault in Travis County at 11:00 p. m. on September 6, 1969, is a different issue, both in point of law and fact, from the issue of the consent of the prosecutrix to the alleged rapes occurring in Williamson County on the late afternoon of September 7, 1969, following a number of sexual incidents at two locations in Hays County and a short trip to the Austin Municipal Airport.[16] Be-

**12.** In *Blackburn,* the defendant was convicted of breaking and entering a dwelling (Fla.Stat. ch. 810, § 1 (1967)), unlawfully assaulting a person (Victim One) therein (Fla.Stat. ch. 784, § 1 (1967)), and an attempted crime against nature (Fla.Stat. ch. 800, § 1 (1967)), after he had been acquitted in a previous trial of sexual assaults (Fla.Stat. ch. 784, § 1 (1967)) against two other women (Victims Two and Three) who were residents of the same apartment building in which Victim One lived. Although the evidence against the defendant in the second case was strong, the prosecutor used the testimony of Victims Two and Three to prove that the defendant was the person who broke into their apartments and sexually assaulted them. In his closing argument, the prosecuting attorney then disparaged the identity testimony of Victim One and relied upon the combined effect of all three identifications to establish defendant as the person who assaulted Victim One. We overturned the conviction, on the ground that the issue of the identity of the assailant of Victims Two and Three, an evidentiary fact used by the prosecutor to prove that defendant was the assailant of Victim One, was necessarily passed upon in defendant's favor in the first trial.

**13.** *Johnson v. Estelle, supra,* at 350.

**14.** *See, e. g., Keck v. State,* 1921, 90 Tex.Cr.R. 206, 234 S.W. 396; *Powell v. State,* 1904, 47 Tex.Cr.R. 155, 82 S.W. 516; *Batchelor v. State,* 1900, 41 Tex.Cr.R. 501, 55 S.W. 491.

**15.** We are not to be understood as holding that collateral estoppel is automatically to be found where two distinct crimes arise out of the same transaction, same place, and same time. *See United States v. Smith,* 5 Cir., 1973, 470 F.2d 1299. Neither do we intimate the reverse principle—that collateral estoppel is automatically to be ruled out where two crimes arise out of different times and places. *See, e. g., Blackburn v. Cross,* 5 Cir., 1975, 510 F.2d 1014.

**16.** From a strictly legal viewpoint, since each alleged rape constitutes a separate crime under Texas law (*see* note 14, *supra* ), the issue of prosecutrix's consent to each alleged rape is separate from the issue of her consent to every other alleged rape, even when they occur at one place within a relatively brief time span. As a practical matter, however, when faced with evidence of several alleged rapes occurring at different times and places and under different circumstances, the jury is likely to separate the issues of prosecutrix's consent into categories of time and place of the rape. Since we are to view the record below "in a practical frame," *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. 1189, "with realism and rationality," *id.,* and "by applying conventional idioms to the jurors' deliberations," *Johnson v. Estelle, supra* at 352, we view the consent issue from the latter "time-place" viewpoint rather than alone from the strictly legalistic viewpoint of the Texas substantive law concerning rape. Thus, there are, in all, four possible issues of consent involved in this case: (i) the consent of the prosecutrix to the initial assault in Travis County, (ii) her consent to the initial alleged rapes in the field in Hays County, (iii) her consent to the subsequent alleged rapes in the

cause these consent issues are not identical, it was not logically or legally necessary for the first jury (Williamson County charge) by its general verdict of not guilty, to have decided both issues of consent in favor of Petitioner.

The next question to answer is whether there is any basis from the record below which would indicate that the first jury (Williamson County), even though not compelled to do so, found both issues of consent in defendant's favor.

Our careful review of the record below convinces us that that question must be answered in the negative.[17] The Trial Judge twice instructed the jury during the formal jury charge that Petitioner was being tried for the crime of rape of the prosecutrix *in Williamson County. See* App. at 62–63. The natural effect of this twice-repeated instruction would be to remind the jury that only the evidence before them pertaining to the events in Williamson County were ultimately significant in their deliberations. Additionally, the evidence which was presented to the Williamson County jury contained almost nothing from which the jury could infer consent of the

prosecutrix to the initial assault in Travis County, though there was substantial evidence which could support a jury finding of consent for some of the acts in Hays and Williamson Counties.[18]

Therefore, the *Ashe* test is satisfied, since "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson, supra,* at 444, 90 S.Ct. at 1194. Specifically, the first jury (Williamson County) could have grounded its general verdict of not guilty of rape in Williamson County solely upon a finding that prosecutrix consented to the sexual encounters in Williamson County. The state is therefore not foreclosed by the principle of collateral estoppel enunciated in *Ashe,* from prosecuting Petitioner for the assault in Travis County.[19]

AFFIRMED.

---

motel in Hays County, and (iv) her consent to the final alleged rapes in the motel in Williamson County.

17. As Court on oral argument was quite concerned with what was necessarily found by the first (Williamson County) jury's acquittal, we asked parties through their counsel to supply us with copies of the indictment, formal jury charge and final arguments in the Williamson County trial. Both the indictment and the formal jury charge explicitly limited the jury's consideration to those events which transpired in Williamson County and thus support our finding that the Williamson County jury did not necessarily find that prosecutrix consented to the assault in Travis County. No transcript of the final argument to the jury was made and only one of the persons present, the lead counsel for defendant at the Williamson County trial, could remember the gist of the arguments for both sides. We have given careful consideration to his affidavit, and nothing contained therein significantly alters our conclusion that the Williamson County jury did not necessarily find that prosecutrix consented to the assault in Travis County.

18. Thus, all of the evidence given of prosecutrix's opportunities to escape or seek help related to events which transpired *after* the initial forcible assault in Travis County and the initial rapes in Hays County. *See* note 2, *supra.*

19. We must deal with one last contention raised by Petitioner for the first time in oral argument. Although citing us to no cases to this effect, Petitioner maintains that, under Texas law, consent given after assault with intent to commit rape, but prior to the rape itself relates back to the beginning of the assault. Therefore, Petitioner argues, since the first jury found that prosecutrix consented to the alleged rape in Williamson County, that consent is retroactive to the initial assault in Travis County, so that *Ashe* bars the state from trying Petitioner for assault.

The short answer to this argument is that Texas law also provides that each rape is a separate crime (*see* note 14, *supra*). Even if consent is retroactive, it can only be retroactive to the beginning of each separate rape. Thus consent given by the prosecutrix to the alleged rapes occurring in Williamson County is not retroactive to the initial assault in Travis County.