**UNITED STATES of America**

v.

**Robert C. THOMPSON.**

**No. LR–CR–81–33.**

United States District Court,
E. D. Arkansas, W. D.

July 13, 1981.

George W. Proctor, U. S. Atty., E. D. Ark. by Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

Leon B. Catlett, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

Pending before the Court is defendant Robert C. Thompson's motion to dismiss the ten-count indictment which was filed against him on May 18, 1981. In support of this motion it is urged that the June 1, 1979, acquittal of the defendant on a previously filed indictment for perjury has collaterally estopped the Government from prosecuting him upon the charges set forth in the present indictment. In order to fully review the issues raised in the motion to dismiss, it is necessary to discuss the proceedings which surrounded the previous indictment. That indictment, filed on April 2, 1979, charged the defendant with one count of perjury (18 U.S.C. § 1623) as follows:

"THE GRAND JURY CHARGES:

"1. That on or about the 8th day of August, 1978, in Little Rock, Pulaski County, in the Eastern District of Arkansas, ROBERT C. THOMPSON, while under oath as a witness in proceedings before the Grand Jury of the United States, duly empaneled and sworn in the United States District Court for the Eastern District of Arkansas, knowingly did make a false and material declaration, that is to say:

"2. At the time and place aforesaid, the Grand Jury was conducting an investigation to determine whether there had been committed in the Eastern District of Arkansas violations of the laws of the United States, to-wit, the Grand Jury's investigation was concerned with whether bribes and kickbacks were being paid to various county officials within the Eastern District of Arkansas, in violation of Title 18, United States Code, sections 1952, 1962 and 1341.

"3. It was a matter material to said Grand Jury investigation to determine whether or not ROBERT C. THOMPSON had paid bribes and kickbacks to any county official within the Eastern District of Arkansas.

"4. At the time and place aforesaid, ROBERT C. THOMPSON while under oath, did knowingly declare before said Grand Jury with respect to the aforesaid material matter as follows:

"Q. Could you tell us the Counties you deal with, sir?

"A. Yes, sir. I deal with St. Francis; Cross; Poinsett; Clay; White; Woodruff; Conway; Faulkner; Phillips. I believe that's it, sir.

\* \* \* \* \* \*

"Q. Oh, that's pretty well it. In these Counties that you have dealt with, Mr. Thompson, under your oath and subject to the penalty of perjury, have you ever paid to any County Official any monies or made any gifts to them as a result of doing business with the County?

"A. No, sir. No, sir. At Christmastime I have given gifts of grapefruit or oranges. That pretty well constitutes that, sir.

"Q. That's all you have ever given?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. And again, sir, I ask you specifically so that I get a very definite answer out of you you have never paid to any County Official any sum of money whatsoever for having done business with that County?

"A. No, sir.

"5. The aforesaid testimony of ROBERT C. THOMPSON, as set forth in this indictment, was false and known to him to be false when made.

"A violation of Title 18, United States Code, Section 1623."

On June 1, 1979, a jury trial[1] was held which resulted in a finding that the defendant was not guilty of the charges set forth in the indictment. During the course of the trial, the defendant was asked the same

1. The previous case was also assigned to Judge Elsijane T. Roy.

questions which had been propounded to him during the grand jury proceeding and which were subsequently set forth in the indictment. His responses were the same as those he had given before the grand jury, and he testified that what he had told the grand jury and what he was reiterating at the trial was the truth. Further, when asked whether he had ever given *any* county judge *any* money in exchange for having done business with *any* county, he replied, "Absolutely not." At the close of the case, the jury deliberated for thirty minutes and returned its verdict of "not guilty."

The indictment presently under consideration, filed over two years after the filing of the previous one, contains nine substantive counts of bribery (18 U.S.C. § 1952) and one count of perjury (18 U.S.C. § 1623). The bribery counts arise from alleged illegal transactions between the defendant and various county judges over a period between May 1976 and May 1978; the perjury count is based upon the defendant's testimony at his June 1, 1979, perjury trial to the effect that he had never paid any money to any county judge. A copy of the indictment, in its entirety, is attached to this Opinion (see Appendix).

In setting forth the test to be applied in determining whether the principle of collateral estoppel applies in any given case, the Supreme Court reasoned as follows in its landmark opinion, *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970):

> " 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.
>
> \*    \*    \*    \*    \*    \*
>
> "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the plead-

ings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' [Footnote omitted.] The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 240 [92 L.Ed. 341]." 397 U.S. at 443, 444, 90 S.Ct. at 1194.

Under the standard set forth above, this Court must analyze all of the circumstances surrounding the previous trial and must determine upon what issue that jury's verdict of acquittal was based. Both parties herein fully agree that this is the test to be applied, but differ in their conclusions of what the result should be.

The Government urges that collateral estoppel is not applicable in the instant case. Its argument is threefold:

First, it contends that a distinction may be made between the May 18, 1979, indictment for perjury and Count X of the present indictment, in that the false statements charged in each were alleged to have been made upon two different occasions; to wit, the first indictment charged that the defendant lied to the grand jury on August 8, 1978, while the second indictment alleges that the false statement (which the Government acknowledges was substantially identical to the previous false statement) was made under oath by the defendant at his June 1, 1979, jury trial.

The Government's second argument is that the first nine counts of the second indictment charge the defendant with entirely separate and distinct offenses (bribery) than that charged in the previous indictment (perjury).

The third argument presented by the Government is that the only county judge called to testify against the defendant at his first trial was former St. Francis County Judge W. B. Hamilton, whom the Government states that it does not intend to recall as part of its case in chief at the second

trial, nor does it intend to introduce any evidence at all pertaining to the payment of kickbacks in St. Francis County. Rather, the Government anticipates that its evidence in the present case will only concern kickback payments allegedly made by the defendant to county officials in Clay and Poinsett Counties. In its brief, the Government explains that no mention of illegal activities in these two counties (Clay and Poinsett) was made in the previous trial due to the fact that the "cooperation" of former Clay and Poinsett County Judges Frank Dean and Boyce McCleskey was not obtained until after the conclusion of the first trial. Thus, according to the Government's brief, "the United States could not have utilized the evidence concerning Poinsett and Clay counties in the first trial because the plaintiff did not have it at that time."

While defending the integrity of the present indictment, the Government nevertheless suggests that it would have no objection to the Court's striking as surplusage any reference to St. Francis County or any other county with the exception of Poinsett and Clay counties. After a careful and painstaking review of the present indictment and of the proceedings surrounding the previous indictment, this Court cannot agree that anything short of outright dismissal can cure the inherent defects in the present charge. The Government has failed to show, and the Court has been unable to see, how the jury which acquitted the defendant on the previous charge "could have grounded its verdict upon an issue other than that which the defendant [now] seeks to foreclose from consideration." *Ashe v. Swenson, supra,* at 444, 90 S.Ct. at 1194. The Court is faced with this question: What possible conclusion could the jury have reached other than the conclusion that the defendant had been truthful when he told the grand jury and when he testified at his trial that he had never paid *any* money to *any* county official in the Eastern District of Arkansas in exchange for doing business with *any* county; i. e., that he had never bribed any county judges? The Court cannot fathom any other rational interpretation of the jury's verdict of acquit-

tal. The crime of perjury is unlike other more complex substantive crimes in which the Government is required to prove several more distinct elements in order to attain a conviction. In such cases, a general verdict of acquittal may result from the failure of proof on any number of points, and one would necessarily be forced to engage in speculation to some degree when trying to determine precisely upon what issue the jury's verdict was grounded. Not so with a perjury charge, however, which presents a substantially more narrow fact determination and thus makes the nature of the jury's finding far more certain.

The above observation was made in *U.S. v. Brown,* 547 F.2d 438, 442 (8th Cir. 1977), a case also originating in the Eastern District of Arkansas, which involved facts quite similar to those at hand. There, the defendant Brown had been tried and acquitted upon a perjury charge, then later tried and convicted upon a conspiracy charge. The perjury indictment alleged that Brown had lied to a grand jury which was investigating a bank robbery conspiracy when he answered that he had no knowledge of the conspiracy. The indictment alleged that his statements were false and that he in fact had discussed the robbery with others and had been present at a certain place upon the date the robbery was to have occurred for the purpose of picking up the money that was to have been stolen. At trial Brown testified that he knew nothing of the planned robbery and was present at the time and place in question for a different reason. Despite conflicting evidence presented by Government witnesses, the jury returned a verdict of not guilty.

Subsequently, the Government indicted Brown for conspiracy, which charge was based upon the same attempted bank robbery which had been the subject of the perjury trial. Brown filed a motion to dismiss on the grounds that the factual issue to be determined at the conspiracy trial had already been resolved by his acquittal in the perjury trial. The district court denied his motion and proceeded with the trial, which resulted in Brown's conviction. The Eighth

Circuit reversed on appeal, relying upon the guidelines set forth in *Ashe v. Swenson, supra.* The Court noted that,

"... the narrow question before the trial jury, realistically, was whether he [Brown] had lied about his noninvolvement in the conspiracy. The jury must have believed his testimony; it could not have grounded its verdict upon any other issue." 547 F.2d at 442.

The Government was held to be collaterally estopped from pursuing the second prosecution since the issue of fact in the conspiracy charge

"had been before the jury in the perjury case and must necessarily have been resolved by the jury in favor of Brown. He therefore could not be required to 'run the gantlet a second time.' [*Ashe v. Swenson, supra,* at 446, 90 S.Ct. at 1195.]" 547 F.2d at 443.

■ So it is in the case at hand. The factual issues in the present indictment are (1) whether the defendant bribed Clay and Poinsett County officials on the dates set forth in Counts I through IX, and (2) whether the defendant lied when he testified at his June 1, 1979, perjury trial and stated that he had never bribed *any* county officials *anywhere* in the Eastern District of Arkansas (Count X). Both of these issues must necessarily have been resolved by the jury in the defendant's first trial when he was asked if he had ever bribed any county officials in the Eastern District of Arkansas and whether his previous grand jury testimony to the effect that he had not was truthful. The fact that the Government now plans to use new evidence against the defendant other than that previously introduced in no manner obviates the basic double jeopardy problem that exists here. If anything, the filing of additional charges against the defendant after obtaining new evidence which admittedly was unavailable to the Government at the former trial tends to exacerbate the unconstitutionality of the second prosecution. As noted by the Fifth Circuit in *Johnson v. Estelle,* 506 F.2d 347 (5th Cir. 1975),

"Double jeopardy is not a semanticist's paradise, but is to be determined by applying conventional idioms to the jurors' deliberations. There must be some legal necessity basic to one acquittal, not involved in the next trial, to justify a superseding conviction. We cannot permit initial trial deficiencies to be cured by subsequent trials. There are four quarters to a football game ... Multitudinous criminal charges may spring from the same incident. The State's argument in the present case would nullify the doctrine of double jeopardy because any slight deviation in the indictment would give the State another Monday morning quarter." 506 F.2d at 352.

Thus, the fact that the Government plans to introduce new evidence at this trial and to forego the use of W. B. Hamilton's testimony makes no difference. It cannot be said that the verdict of acquittal in the prior trial was only a reflection of the jury's finding that the defendant paid no bribes to W. B. Hamilton. While Hamilton may have been the only former county judge to testify because he was the only one at the Government's disposal at that time, it must be remembered that the indictment charged the defendant with having lied when he said he had *never* paid *any* bribes or kickbacks to *any* county official in the Eastern District of Arkansas. Nor was any specific reference to W. B. Hamilton made in the Court's instructions to the jury. Rather, the indictment itself (as set forth hereinabove) was read in full to the jury (pp. 9 and 10 of the Court's Instructions), together with an instruction which stated the following:

"The materiality of the matter involved in the alleged false testimony is not a matter with which you are concerned, but rather is a question for the Court to decide. You are instructed that the questions asked the accused before the grand jury, as charged in the indictment as to whether the defendant had ever paid money or made gifts to any county official as a result of or for having done business with that county, constituted material matter in the proceeding be-

fore the grand jury." (P. 17A of Court's Instructions.)

There is nothing in either the indictment itself, the evidence presented at trial, the instructions to the jury, or the verdict that would suggest that the jury's finding was limited merely to a determination that the defendant did not bribe W. B. Hamilton. Rather, as noted above, the only reasonable interpretation of the verdict is that the jury found the defendant had paid no bribes to any county judge anywhere in the Eastern District of Arkansas.

The above discussion disposes of the Government's third argument and demonstrates the necessity, under the rule of *Ashe v. Swenson, supra,* for dismissing the present indictment in any event. In order to leave no question unanswered, however, the Court deems it expedient to address also the remaining two contentions relied upon by the Government. The first argument merits little consideration: The Government contends that a distinction may be made between the first perjury indictment and Count X (perjury) of the second indictment, in that the two false statements were allegedly made on two separate occasions, the first to the August 8, 1978, grand jury and the second to the petit jury sitting at the defendant's June 1, 1979, trial. The Government further notes that the false statements alleged in Count X of the second indictment contain a few additional phrases. A comparison of the two indictments shows that indeed the rendition of the false statement in Count X is lengthier by some eight questions and answers, all of which are concerned with whether the defendant testified at the grand jury proceeding to the same effect that he was testifying at trial, and whether his testimony on both occasions was truthful, to which the defendant responded in the affirmative. The remaining questions were identical to those asked of him before the grand jury, as were his responses thereto. The two charges are thus substantially the same; the jury clearly resolved the issue in favor of the defendant at the first trial and he may not be twice placed in jeopardy therefore via Count X of the present indictment.

The final point raised by the Government is its assertion that at least Counts I through IX of the indictment should be allowed to stand since they charge a completely different crime than that charged in the previous indictment. This distinction, however, is meaningless in light of the Court's conclusion that the ultimate issues of fact in the present case have already been resolved in the defendant's favor in the prior trial. The Government, having failed to prove certain facts once, cannot be permitted to prove them again simply by changing the name of the crime. *McDonald v. Wainwright,* 493 F.2d 204, 207 (5th Cir. 1974); *Harlow v. United States,* 301 F.2d 361, 375 (5th Cir. 1962), *cert. denied,* 371 U.S. 814, 83 S.Ct. 25, 9 L.Ed.2d 56, *reh. denied,* 371 U.S. 906, 83 S.Ct. 204, 9 L.Ed.2d 167. See, also, *United States v. Nash,* 447 F.2d 1382 (4th Cir. 1971), which held that,

> "Double jeopardy is a constitutional bar not only to retrial for the same offense, but also to relitigation of adjudicated issues whether they emerge in trials for the same or distinct offenses. *Ashe v. Swenson [supra].* *Sealfon v. United States,* 332 U.S. 575, [68 S.Ct. 237, 92 L.Ed.2d 341], instructs that the determination 'depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial.' This distillation precipitates what 'at each trial was crucial to the prosecution's case and which was *necessarily adjudicated* in the former trial.' If it is identical the Government is estopped by the prior determination from proceeding with the second prosecution." 447 F.2d at 1384, 1385.

See, also, in this regard, *Turner v. Arkansas,* 407 U.S. 366, 92 S.Ct. 2096, 32 L.Ed.2d 798 (1972); *United States v. Brown, supra; Johnson v. Estelle, supra; Erlich v. United States,* 145 F.2d 693 (5th Cir. 1944); and *United States v. Barnes,* 386 F.Supp. 162 (E.D.Tenn.1973).

The cases cited by the Government in support of its contention that the doctrine

of collateral estoppel does not apply in this case are all clearly distinguishable from the present situation: *Turley v. Wyrick*, 554 F.2d 840 (8th Cir. 1977), dealt with the issue raised by successive prosecutions by state and federal governments for acts arising out of the same criminal episode, and held that the collateral estoppel doctrine does not apply when different sovereigns, and, thus, different parties, are involved in the litigation. Obviously there is no question of dual sovereignty in the present case.

Also inapplicable is *King v. Brewer*, 577 F.2d 435 (8th Cir. 1978). There the defendant had been charged in state court with having committed two separate robberies. One robbery was alleged to have occurred at the Medd-O-Lane Dairy Store at approximately 7:00 p. m. on July 7, 1973, while the second robbery was alleged to have occurred some 9½ hours later at 4:45 a. m. on July 8, 1973, at Cal & Bob's Supermarket, both in the town of Davenport, Iowa. The defendant was first tried for the robbery of Cal & Bob's Supermarket. He presented an alibi defense and was acquitted. Later he was tried for the Medd-O-Lane Dairy Store robbery and found guilty. As in the earlier trial, the defendant took the stand and presented alibi testimony, after which the state introduced evidence of the other robbery in rebuttal. The Court held that the state's rebuttal evidence was used to impeach the defendant's alibi testimony and was not introduced for the primary purpose of establishing guilt in the Medd-O-Lane robbery. The case was distinguished from *Ashe v. Swenson* in that the charges in the latter case arose from a single occurrence where the critical issue was whether the defendant was a participant, along with others, in the robbery of six people. In acquitting Ashe in his first trial the jury found that he was not a participant in the robbery at all. In the second trial a different jury found that he *was* one of the robbers. In contrast, the Court in *King v. Brewer* noted that the defendant in this case was charged with committing two separate and distinct robberies of two different stores, separated by distance, circumstances, and time of about 9½ hours.

"Under no reasonable or possible construction of the record of the first trial of appellant for the robbery of Cal & Bob's, was the jury required or permitted to make a finding of the whereabouts of appellant at the time of the earlier robbery of Medd-O-Lane at approximately 7:00 p. m. July 7, 1973." 577 F.2d at 438.

Thus is this case distinguishable from the case at hand in that ultimate issues of fact necessary for conviction on the second indictment *have* previously been determined in favor of the defendant at the prior trial.

Finally, the Government urges that the Fifth Circuit decision in *Douthit v. Estelle*, 540 F.2d 800 (5th Cir. 1976), is controlling in the case at bar. There the evidence showed a series of assaults and sexual encounters by the defendant with the same woman occurring in three different counties over a 22-hour period. The defendant was charged with rape in one of the counties, tried, and acquitted. He was then tried in one of the other counties for assault with intent to commit rape and convicted. Evidence of the entire criminal episode was introduced at both trials and consent of the victim was interposed as a defense both times.

The Court found that the principles of collateral estoppel enunciated in *Ashe v. Swenson, supra*, did not preclude the second prosecution. In his appeal to the Fifth Circuit of the district court's denial of habeas corpus relief, the defendant argued that the first jury must necessarily have found that the prosecutrix's consent extended to all of the defendant's actions throughout the three counties during the entire 22 hours. The Court found, however, that

"... Petitioner misconceives the nature of the test mandated by *Ashe*...

"The assault with intent to commit rape in Travis County and the alleged rape in Williamson County are separate crimes involving separate elements. Specifically, the issue of the consent of the prosecutrix to the assault in Travis County at 11 p. m. on September 6, 1969, is a different issue, both in point of law and

fact, from the issue of the consent of the prosecutrix to the alleged rapes occurring in *Williamson County* on the late afternoon of September 7, 1969, following a number of [intervening] sexual incidents ... Because these consent issues are not identical, it was not logically or legally necessary for the first jury (Williamson County charge) by its general verdict of not guilty, to have decided both issues of consent in favor of Petitioner." 540 F.2d at 805–807.

The Court then went on to determine whether the jury, although not compelled to, had in fact found both issues of consent in the defendant's favor. Upon analyzing the record of the first trial, the Court found that the jury had not made a determination upon both issues of consent and thus found that the *Ashe* test was satisfied, since "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson, supra,* at 444. The state consequently was not precluded from bringing the second prosecution.

The *Douthit* decision is plainly not controlling upon the present case due to the factual differences between them. As noted above, in the case at bar the verdict of acquittal in the defendant's previous perjury trial bars the Government from proceeding with the second indictment, since a rational jury could *not* have grounded its verdict upon an issue other than that which the defendant now seeks to foreclose from consideration. Consequently, the defendant's motion to dismiss the indictment must be granted.