**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michael A. LANGE, Defendant and Appellant.**

**Cr. No. 920179.**

Supreme Court of North Dakota.

Feb. 23, 1993.

John J. Mahoney, State's Atty., Center, for plaintiff and appellee.

Michael R. Hoffman, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

Michael A. Lange appealed from a criminal judgment of conviction based on the verdict of a jury which found Lange guilty of Gross Sexual Imposition pursuant to section 12.1–20–03, NDCC. Lange raises issues concerning double jeopardy and counseling record privileges. We affirm.

On May 18, 1991, it was alleged that Lange abducted the complainant in Mercer County, North Dakota, and committed two acts of rape against her. A number of hours later, while still allegedly restraining the complainant by force, Lange drove her to neighboring Oliver County where another alleged rape occurred. Lange contends that the sexual acts between them were consensual.

Lange was tried in Mercer County for one charge of Felonious Restraint and two charges of Gross Sexual Imposition. Lange was acquitted on all three charges.

Lange was subsequently tried in Oliver County for one charge of Gross Sexual Imposition stemming from the alleged rape in Oliver County. Lange twice moved to dismiss the Oliver County charge based upon double jeopardy and collateral estoppel grounds. The court denied the motions. Lange also attempted to cross-examine the complainant regarding her refusal to release her records of counseling sessions which she took part in while living in California. Under California law, one's counseling records are protected by privilege. The court did not allow Lange to cross-examine the complainant about her counseling records. The jury found Lange guilty of Gross Sexual Imposition. Lange appealed on the grounds that the denial of

his double jeopardy/collateral estoppel motion and the refusal of his request to cross-examine the complainant about her counseling records were error.

### Double Jeopardy and Collateral Estoppel

The North Dakota Constitution protects against double jeopardy for the same offense. N.D. Const. art. I, § 12. We are also obliged to follow the Fifth Amendment of the United States Constitution which similarly protects against double jeopardy. U.S. Const. amend. V; *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) [Fifth Amendment held applicable to the states through the Fourteenth Amendment]; *City of Dickinson v. Kraft*, 472 N.W.2d 441 (N.D.1991).

 Within the double jeopardy clauses are the doctrines of res judicata and collateral estoppel. Res Judicata, also called claim preclusion, bars the entire prosecution of an offense by prohibiting the relitigation of claims which were raised or could have been raised in a prior action between the same parties or their privies and which were resolved by final judgment in a court of competent jurisdiction. *State v. Robideaux*, 493 N.W.2d 210 (N.D.1992); *Hofsommer v. Hofsommer Excavating, Inc.*, 488 N.W.2d 380 (N.D.1992). This case is not one of res judicata as the charged offense is a separate rape, not one previously tried in Mercer County.

 Collateral estoppel is a separate and distinct branch of double jeopardy. *United States v. Bailin*, 977 F.2d 270 (7th Cir. 1992). As a form of issue preclusion, it forecloses the relitigation in a second action based on a different claim of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit.[1] *Hofsommer, supra.*

Collateral estoppel was held to apply to state criminal actions by *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe*, the Supreme Court over-turned the robbery conviction of a participant in a card game whose conviction was obtained after he had been acquitted of robbing another player in the same card game. Because the second prosecution was identical to the first in all aspects with the exception of the victim, the Court held that the State was precluded from relitigating the previously determined issue of defendant's nonparticipation in the robbery. In interpreting the Fifth Amendment's collateral estoppel protection, and thereby importing it to the States via the Fourteenth Amendment, the Court held that collateral estoppel in a criminal context means that "when an issue of ultimate fact has once been determined by a valid and final judgment [i.e., an acquittal], that issue cannot again be litigated between the same parties in any future lawsuit [i.e., a prosecution]." *Id.* at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

 One who argues that collateral estoppel is applicable has the burden of establishing that the issue sought to be foreclosed from consideration in the second case was resolved in his favor in the prior proceeding. *United States v. Seijo*, 537 F.2d 694 (2d Cir.1976). As the party seeking the application of collateral estoppel, Lange has the burden of proving the points of a four-part test which must be met before collateral estoppel will be found to bar relitigation of a fact or issue involved in an earlier lawsuit: (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue? *Hofsommer, supra.*

The first prong of the test requires us to resolve whether the issue decided in the prior adjudication was identical to the one presented in the action in question. Lange

---

1. For a discussion of collateral estoppel and issue preclusion, *see,* Eleanore Hill, *Expanding Double Jeopardy: Collateral Estoppel and the* *Evidentiary Use of Prior Crimes of Which the Defendant Has Been Acquitted,* 2 Fla.St.U.L.Rev. 511 (1974).

contends that the consent issue has already been litigated. To establish whether collateral estoppel applies, we must ascertain what facts were necessarily decided in the prior action with regard to the issue of consent, and we must then determine if the State is attempting to relitigate those facts. *De La Rosa v. Lynaugh*, 817 F.2d 259 (5th Cir.1987).

The issue of consent is addressed in the instruction given by the court to the Oliver County jury. Section 12.1–20–03, NDCC, states that a person who engages in sexual contact with another is guilty of the offense, if, among other things, he compels the victim to submit by force or by threat of imminent death, serious bodily injury or kidnapping, to be inflicted on any human being. The jury was given instructions as to the definition of force, and was told that the testimony regarding the acts in Mercer County involved issues outside the jurisdiction of Oliver County and played no part in the Oliver County proceeding, except that they may be used to explain the actions of the parties.[2] Although testimony was heard by the Oliver County jury regarding the use of force in Mercer County, testimony was also given which fairly implicated Lange in the use of force in Oliver County—the use of force sufficient to negate consent. Therefore, the facts which give rise to the issue of consent were not the same facts as were used in the Mercer County trial and are not thereby prohibited by collateral estoppel.

The case of *Douthit v. Estelle*, 540 F.2d 800 (5th Cir.1976) is particularly applicable to Lange's case. In *Douthit*, the defendant had been charged by the State of Texas with committing a series of rapes against the same woman over a 22–hour period in three counties. Defendant's defense was consent. Defendant was first tried and acquitted of the third rape in Williamson County. Defendant was then tried and convicted of the first-in-time assault with intent to rape in Travis County. Defendant contended that the acquittal collaterally estopped the State from prosecuting him for the rape in the first assault. Even though the prosecution introduced evidence in the Travis County trial which had been introduced in the earlier Williamson County trial, the court upheld the conviction because in the first trial, "a rational jury could have grounded its verdict upon an issue other than that which the defendant sought to foreclose from consideration." *Id.* at 806 (citing *Ashe, supra*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76). *See also King v. Brewer*, 577 F.2d 435 (8th Cir.1978). A realistic and practical inquiry into the jury's verdict demonstrated that the verdict could have been based on a change in the woman's consent between the different occurrences. Although the defendant offered evidence that the woman consented to the third act, that evidence was not presented at the trial of the first abduction. Thus, the jury's acquittal of rape on the third occasion did not necessarily decide the woman's consent at the first rape because sufficient evidence was introduced to support a change in the victim's consent. The criminal acts in *Douthit* were also removed from each other by considerable time, distance, and circumstances. *De La Rosa, supra; Douthit, supra.*[3]

Because each alleged rape constitutes a separate crime under North Dakota law, the issue of the complainant's consent to each alleged rape is separate from the issue of her consent to every other alleged rape, even when they occur at one place within a relatively brief time span. As a

---

2. The relevant jury instruction reads:

"OTHER ACTS

You have heard testimony regarding certain acts alleged to have occurred in Mercer County. You are only to consider that information insofar as it may explain the actions of the people involved in these allegations. However, those issues are outside the jurisdiction of this trial and will be determined in a separate proceeding."

3. In *State v. Pendergrast*, 340 N.W.2d 454 (N.D. 1983), we held that while the two offenses, one in Dickey County and one in Stutsman County, both violated section 51–16–01(2), NDCC, they were committed at different times and places and were separate offenses. The evidence to establish the violation in one case was not adequate to establish the violation in the other instance, so collateral estoppel did not apply.

practical matter, when faced with evidence of several alleged rapes occurring at different times and places and under different circumstances, as the jury in Oliver County was, the jury may separate the issues of the complainant's consent into categories of time and place of the rape. Since we are to view the record below "in a practical frame," *Ashe, supra* at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475, "with realism and rationality," *Id.*, and "by applying conventional idioms to the jurors' deliberations," *Johnson v. Estelle*, 506 F.2d 347, 352 (5th Cir.1975), we view the consent issue from the time-place viewpoint rather than only from the strictly legalistic viewpoint of the North Dakota substantive law concerning gross sexual imposition. *See Oliphant v. Koehler*, 451 F.Supp. 1305 (W.D.Mich. 1978). Thus, there are two possible issues of consent involved in this case: (1) the consent of the complainant to the initial rapes in Mercer County; and (2) her consent to the final alleged rape in Oliver County.

■■■ The issue of the consent in Mercer County was resolved in the Mercer County trial. The issue of consent in Oliver County was tried by the Oliver County jury. That issue was totally separate from the issue of consent to the sexual acts in Mercer County, which had been determined in Lange's favor. Although the Oliver County jury heard evidence regarding the Mercer County incident, they were told not to consider it in their determination on consent. A jury is presumed to follow the instructions provided by the court. *State v. Kringstad*, 353 N.W.2d 302 (N.D.1984). Similar to *Douthit, supra*, and contrary to *Ashe, supra*, since the Oliver County rape was a separate and distinct act which involved a separate and distinct determination of consent, and there was sufficient independent evidence presented to prove lack of consent as it pertained to the Oliver County charge, the Oliver County verdict was not based upon the same issue as determined by the Mercer County jury, and collateral estoppel does not bar the issue.[4]

The district court did not err in denying Lange's motion to dismiss based upon double jeopardy and collateral estoppel grounds.

---

4. The complainant testified that she was originally restrained and tied with speaker wire in Mercer County. Once in Oliver County, she was still tied with speaker wire. She testified as follows:

"A. .... At this time I was worried. I was scared for my life because he said something about he kept saying—'What are you going to do with me?' and he would say, 'You'll see. You'll see.' And then I would ask him again and then he would say—I would say, 'Why can't you let me go?['] And he would say, 'I can't do that.'

* * * * * *

"A. .... I was trying to think of something to get away and I was working on my wrists. I was pulling—trying to get loose, trying to loosen the wire around my wrists and I thought if I could get loose, then I could open the door and jump out or something.

* * * * * *

"A. Yah, my hands were still tied and he put the sleeping bag around my shoulders and he was hanging on to this and I thought of running to the trees, but I couldn't get away.

* * * * * *

"A. .... I started saying stuff like, 'Please don't kill me, don't kill me.'

* * * * * *

"A. .... I tried—I got those—the wire finally off my wrists and I loosened it enough to get it off.... When he saw that, I grabbed it and I opened the passenger's door and threw it outside and then he went out to get it and I locked him out of the pick up and then I realized that he had the keys on him and he opened the pick up and got back in and—

"Q. What happened then?

"A. He started touching me again and he said that he was going to make love to me or I was going to make love to him again. I was begging him not to.

* * * * * *

"A. ... then he penetrated me again and—

* * * * * *

"A. ... I thought he was just going to hit me over the head and dig a hole and bury me.

* * * * * *

"Q. ... he pushed your head down to his penis; is that right?

"A. Yes."

**88** 

*Counseling Records*

██ In the Mercer County trial, the complainant invoked her privilege under California law, where the counseling took place, not to release her counseling records. Although the State did not present evidence to the jury regarding counseling in the Mercer County trial, Lange argued that fact to the jury. In the Oliver County trial, the State did present evidence to the jury regarding the complainant's counseling. Lange attempted to cross-examine the complainant on the fact that she had refused to give her consent to release those records, but the court denied Lange permission to do so.

California law protects confidential communications between a sexual assault counselor and a victim. Cal.Evid.Code § 1014. Privileges may be waived under Rule 510, NDREv, but it appears there was no waiver in this case because the State presented evidence of the complainant's counseling only to the extent of showing that she did in fact receive counseling—not to reveal the outcome of the counseling.

Despite the complainant's waiver or non-waiver of the privilege as granted by California law, Lange was prohibited from cross-examining the complainant on her refusal to release her counseling records under Rule 512, NDREv.

The trial court did not err in denying Lange permission to cross-examine the complainant on her counseling records.

The judgment of the district court is affirmed.

MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.