Roberto DE LA ROSA, Appellant,

v.

STATE of Texas, Appellee.

No. 13–82–378–CR.

Court of Appeals of Texas,
Corpus Christi.

Nov. 10, 1983.

James Lawrence, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and BISSETT and YOUNG, JJ.

## OPINION

BISSETT, Justice.

Appellant was indicted for the murder of John David Rodriguez. Following a jury trial, he was found guilty of the offense of voluntary manslaughter and punishment was assessed at 10 years in the Texas Department of Corrections.

In his first ground of error, appellant challenges the sufficiency of the evidence. The undisputed facts are as follows: In October 1981, appellant's daughter was shot and killed by Joe Lee, her common law husband. Two months later, on December 19, 1981, appellant entered the Astros Lounge in Corpus Christi and fired one or two shots at Joe Lee. A friend of Lee's, Juan Mata, grabbed appellant's pistol and fired some shots at appellant. During the gun fire, John David Rodriguez (John David), a small child was shot and killed. Joe Lee was also killed and the appellant suffered two gunshot wounds. Testimony concerning the number of shots fired, when they were fired, and who fired them is disputed. Although a number of witnesses were in the bar at the time of the killing, no one actually saw who shot John David Rodriguez and, therefore, this case rests on circumstantial evidence.

Melba Ramos, John David's twenty-five year old cousin, testified that she took John David to the Astros Lounge and that he was selling tamales to raise money to buy Christmas gifts. Joe Lee and Juan Mata were already in the bar when Melba and John David arrived. Melba had known Joe Lee for about two years and chatted with him. As John David sold tamales, Melba ordered a beer. Shortly thereafter, Melba sat John David on a bar stool and went into the women's restroom. While she was in the restroom she heard somebody shout, "You have to die." She then heard "shots" but she couldn't remember how many or

whether there was more than one. She came out of the restroom and saw John David "standing close to a table where they were passing out the numbers." John David then "fell in my arms." Melba said she saw "a man standing on the door with the gun in his hand." Her testimony does not reveal who this man was, but when asked by police officers who had shot John David, she said she wasn't sure. At the trial, although Melba could not positively identify appellant as being in the bar when the shooting occurred, she said appellant looked "something like the man who was on the floor." Melba put her foot on this man's face and said, "You better die." The State did not further develop Melba's testimony and neither did the appellant.

Juan Mata testified that he was in the Astros Lounge when the shooting occurred. According to Mata, he and Joe Lee arrived at the bar around 1:00 p.m. The appellant was in the bar drinking beer but left shortly thereafter. By the time Melba and John David arrived at the bar, Juan Mata was making numbers for a "boxing pot." Joe Lee sat down and talked to Melba. Mata further testified that he did not remember seeing Melba go to the restroom but that he saw appellant walk to the bar, pull out a gun, and shoot. He said John David was "around with me here." Mata said that no words were spoken before the shooting, and that there was one shot and then "right away" another one. Mata then approached appellant. He did not know who, if anyone, had been hit by the shots. Mata then struggled with appellant but was hit hard and knocked down. When he recovered from the blow, appellant and Joe Lee were struggling for the gun. Mata pulled the gun out of appellant's hand and then Joe Lee "got up and came down" and said, "That's it with me." At that point, appellant got under the pool table and Mata "went under" and fired two shots at appellant, trying to shoot appellant in the head. Mata then came out, fired a shot, and then put the gun to appellant's head, but, "it wouldn't go, just click, click," so Mata hit him with the gun on the head. According to Mata, appellant then said, "This is the way I want it, now they can charge you with the boy's death."

Mata further testified that "when we were struggling right here I saw Melba with a cue stick. She was yelling to appellant, 'You hit my little boy, you hit my little boy'." Mata further testified that appellant "shot about three shots, I guess." On cross-examination, Mata said he didn't know which shot hit the child and didn't know where the child was during the episode.

Antonio Mendoza testified that he was in the Astros Lounge when the shooting started. Mendoza said he was sitting in the bar watching a football game when appellant entered the lounge, walked to the bar, and started shooting. When the first shot was fired, Mendoza ducked and he saw Mata "moving towards Robert" (the appellant) and "that little boy was going down also."

Mendoza testified that he heard one shot, and then a few seconds later, another shot. He was unable to say, however, who fired the first shot, where it originated, or where it struck. When he ducked behind the pool table, "I saw Juan Mata moving up, you know, and that little boy was falling." When Mata, Lee, and appellant began struggling for the gun, Melba was already pulling John David towards the back door, and Mendoza went out the front door. Mendoza heard more shots after he was outside the bar, maybe two.

Nueces County Medical Examiner Joseph C. Rupp performed an autopsy on the body of John David Rodriguez. Rupp testified that the bullet which killed John David entered the child's back 14½ inches from the top of the head and 2½ inches to the left of the mid-sternal line, just below the level of the left nipple. Rupp described this as a through-and-through gunshot wound. The bullet was discovered in the clothing of the body. Since the entrance and exit wounds were exactly the same height, Rupp opined that John David was standing upright when shot. Rupp stated that if the child had been on the floor when shot there would have been "more blood" running out

of the front of the wound. Likewise, he said, if the child had been down on the floor, the bullet would not have exited but would have remained in the body and produced a gigantic bruise.

On cross-examination, Rupp further testified that the bullet removed from John David's clothing had "significant distortions" in contrast to the bullet removed from Joe Lee. Rupp said it was possible that the distortions were caused by the bullet hitting something before it hit the body, by the bullet hitting bone as it passed through the body, or by the bullet passing through the victim's jacket.

Appellant testified in his own defense. He told of being in the bar around 1:00 p.m. when Joe Lee and Juan Mata arrived. He said Lee and Mata were laughing, and he presumed that they were laughing at him. He explained how Joe Lee had killed his daughter and how he was angry that Joe Lee was having a good time and making fun of him. He left the bar shortly after Lee and Mata arrived. Appellant admitted returning to the bar around 3:00. He said he went to the bar and heard someone say "I'm going to kill you." He said he was scared and mad. He then described the sequence of events. According to appellant, he pulled his gun out and shot Joe Lee. Appellant and Lee then struggled for the gun and a second shot was fired in the direction of the ceiling. Juan Mata then got control of the gun and fired two shots at the appellant. One of the bullets remained in the appellant, the other bullet passed through his wrist. Appellant said that there was no one around Joe Lee when he fired the first shot and that he "never saw the kid."

■ In challenging the sufficiency of the evidence, appellant argues that John David may have been hit by one of the shots that was fired by Juan Mata. Appellant contends that the significantly distorted bullet removed from John David's body shows that the victim was hit on a ricochet, probably from a shot fired by Juan Mata. We disagree.

In viewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury verdict, and will uphold the conviction only if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983) (Opinion on Motion for Rehearing). In reviewing the evidence, we also follow the well established rule that a jury may accept or reject any part of a witness' testimony. *Johnson v. State,* 571 S.W.2d 170 (Tex.Cr.App.1978).

Although neither the State nor the appellant asked Melba Ramos if shots were fired once she exited the restroom, the testimony of Antonio Mendoza shows that Melba was already pulling John David to the back of the bar during the struggle between appellant, Joe Lee, and Juan Mata. Melba testified that she left the restroom, that John David fell into her arms, and that she then dragged him to the back of the bar. If the testimony of Mendoza and Melba Ramos was believed by the jury, it is obvious that the shot which hit John David was fired before Joe Lee collapsed on the floor, and before Juan Mata obtained possession of the gun. This being the case, it is apparent that the shots fired by Juan Mata at the appellant did not strike John David. It is also apparent from the actions of Melba Ramos during the incident that she did not consider Juan Mata responsible for the injury to John David. Since Juan Mata testified that appellant fired two shots in the direction of Joe Lee, and since John David was nearby Joe Lee, we hold that a rational trier of fact could find all the elements of the offense beyond a reasonable doubt. The evidence is sufficient to sustain the conviction. Appellant's first ground of error is overruled.

■ Although we have been unable to determine exactly what appellant contends in his second ground of error, it appears that he challenges the charge for authorizing a conviction under a theory of straight intent, as alleged in the indictment, in addition to transferred intent. We disagree. The charge tracked the indictment and also

included a charge on transferred intent. Appellant cites no case which holds that it is fundamental error to charge on both theories. Appellant's second ground of error is overruled.

■ We take this opportunity to note that the trial court's charge to the jury incorrectly omitted from the paragraphs applying the law of murder to the facts that the jury should find appellant guilty of murder only if he was not acting under the immediate influence of sudden passions arising from an adequate cause. Had appellant been convicted of murder, this error would have caused a reversal of this case because the failure to properly charge the jury on this issue constitutes fundamental error. See *Cobarrubio v. State*, —— S.W.2d —— (No. 63,801 Tex.Cr.App. January 12, 1983); *Gibson v. State*, 659 S.W.2d 34 (Tex. Cr.App.1983). Since appellant was convicted of voluntary manslaughter, there is no reversible error.

The judgment of the trial court is AFFIRMED.