**Roberto DE LA ROSA
Petitioner-Appellant,**

v.

**James A. LYNAUGH, Interim Director,
Texas Department of Corrections,
Respondent-Appellee.**

No. 85–2809.

United States Court of Appeals,
Fifth Circuit.

May 5, 1987.

260

Charmaine R. Bissell, Sharon Kutzsch-bach, Huntsville, Tex., for petitioner-appellant.

S. Michael Bozarth, William C. Zapalac, Asst. Attys. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Senior Circuit Judge:

Roberto De La Rosa appeals the District Court's denial of his Petition for Writ of Habeas Corpus. De La Rosa entered a bar and fired a gun at Joe Lee, Jr., killing both Lee and an eight year old bystander, John David Rodriguez. Petitioner claims under the Fifth Amendment that the State of Texas is collaterally estopped from trying him in a subsequent trial for the murder of Joe Lee, Jr., since he was previously tried and convicted of voluntary manslaughter for the homicide of the bystander using a theory of transferred intent. The State of Texas pursued convictions of murder in both trials and there was no evidence or argument in either trial that De La Rosa changed his state of mind between firing the two shots at Lee.

A collateral estoppel attack requires this court to make a realistic and practical inquiry into the jury's verdict of voluntary manslaughter in the Rodriguez case to determine what issues that jury necessarily found in reaching its verdict and what issues remained for the Lee jury to consider. *Douthit v. Estelle,* 540 F.2d 800, 803 (5th Cir.1976). A careful examination of the Rodriguez case, including the pleadings, testimony, closing arguments of counsel, and jury charge, demonstrates that the State introduced no evidence whatsoever to support its contention that De La Rosa changed his state of mind between firing the shot that killed Lee and the shot that killed Rodriguez and that their reliance on De La Rosa's testimony is misplaced. We therefore reverse the District Court's denial of De La Rosa's Petition for Habeas Corpus.

I.

On December 19, 1981, De La Rosa entered the Astro Lounge in Corpus Christi, Texas, and fired his .32 caliber pistol once or twice at Joe Lee, Jr. who had shot and killed De La Rosa's daughter two months earlier. Lee and his friend Juan Mata rushed toward De La Rosa and struggled with him over the gun. Another shot was fired during the struggle. Mata wrestled the gun away from De La Rosa and shot De La Rosa in the wrist and the side. Mata also attempted to shoot De La Rosa in the head, but the gun did not fire. De La Rosa was taken to the hospital and placed in intensive care. His intended victim, Joe Lee, Jr., and the eight year old bystander, John David Rodriguez, both lay dead on the barroom floor.

De La Rosa was indicted separately for the murder of Rodriguez and Lee. Presumably because the prosecutor surmised that the case of the innocent eight year old was the more compelling, De La Rosa was

first tried for the murder of Rodriguez. There was no evidence offered at the Rodriguez trial of any relationship between De La Rosa and Rodriguez or of any knowledge by De La Rosa that Rodriguez was even in the bar.[1] The State prosecuted De La Rosa for the murder of Rodriguez under a theory of transferred intent and conceded during oral argument that the jury necessarily based its verdict on transferred intent. The State introduced no evidence of a reduced state of mind.

The State pursued a theory of vengeance for the earlier slaying of De La Rosa's daughter,[2] while De La Rosa sought acquittal on the basis of self-defense and claimed that a third party, Juan Mata, had actually fired the shot that killed Rodriguez. Neither party argued at either trial that the shot that killed Rodriguez was the second shot fired by De La Rosa or that it was fired with a reduced state of mind resulting from the struggle over the gun.

The trial court instructed the jury on the charge of murder as well as voluntary manslaughter, sudden passion, and adequate cause. The court also instructed the jury on all included offenses under a theory of transferred intent. Under the State's transferred intent theory, the jury's inquiry was De La Rosa's conduct and intent toward Lee when both shots were fired. The fact that De La Rosa missed and struck a bystander with one shot allows his state of mind toward his intended victim to be transferred to the actual victim.[3]

The voluntary manslaughter instruction stated, "if you find ... Robert De La Rosa, did then and there unlawfully shoot a firearm at Joe Lee intending to kill him thereby but missed Joe Lee and hit and killed John Rodriguez instead ... under the immediate influence of sudden passion arising from adequate cause ... then you will find the Defendant guilty of Voluntary Manslaughter."[4] The jury convicted De La Rosa of voluntary manslaughter for the shooting and death of Rodriguez and sentenced him to serve ten years.[5]

*Chapter Two*

The State then proceeded to try De La Rosa for the murder of Lee. The trial court denied De La Rosa's Motion to Quash the Indictment on the grounds of collateral estoppel and double jeopardy. The parties introduced nearly the same evidence as was presented at the Rodriguez trial and the court gave nearly the same instructions to the jury. However, the second jury found De La Rosa guilty of murder. De La Rosa had again selected jury sentencing and received a ten-year sentence which the trial court cumulated with his ten-year sentence for the Rodriguez homicide.

De La Rosa appealed both convictions alleging insufficient evidence for the Rodriguez conviction and collateral estoppel/double jeopardy for the Lee conviction. Both verdicts were affirmed. *De La Rosa v. State*, 660 S.W.2d 642 (Tex.App.—Corpus Christi 1983) (Rodriguez Trial); *De La Rosa v. State*, No. 13–83–185–CR (Tex.App. —Corpus Christi 1984) (Lee Trial). De La

---

1. Rodriguez was taken into the bar by his aunt so he could sell home made tamales to raise money to buy Christmas presents.

2. De La Rosa's daughter was the common law wife of Joe Lee, Jr. Two months prior to the shooting in the Astro Lounge, Lee shot and killed De La Rosa's daughter in front of her children. Lee was indicted for her murder and was out on bond when he was killed.

3. The trial Judge instructed the jury on transferred intent in the Rodriguez trial that a "person is criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that a different person was injured, harmed, or otherwise affected."

4. The court's instructions on sudden passion and adequate cause were limited to the statutory language of the Texas Penal Code Ann. § 19.04(b) & (c) (Vernon 1974). The only reference to provocation was that sudden passion can arise only "at the time of the offense and is not solely the result of former provocation." The trial court failed to instruct the jury on Texas case law regarding finding "adequate cause" from an altercation initiated by the defendant's initial aggression. Neither De La Rosa nor the State prosecutor offered such an instruction or objected to its absence.

5. De La Rosa opted for the jury to impose sentence following a bifurcated trial in conformity with Texas law.

Rosa's Petition for Habeas Corpus pursuant to Tex.Code Crim.Pro.Ann. art. 1107 (Vernon's 1977 & Supp.1981), asserting his confinement under the verdict in the Lee trial unconstitutionally violated the doctrine of collateral estoppel, was denied by the Texas Court of Criminal Appeals and the District Court.

## II.

█ The Supreme Court defines collateral estoppel as one aspect of the double jeopardy clause [6] requiring "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970); *see also, United States v. Levy,* 803 F.2d 1390, 1398 (5th Cir.1986). In order for the doctrine of collateral estoppel to apply, the issue or fact must necessarily have been decided in favor of the defendant in the first trial. *Johnson v. Estelle,* 506 F.2d 347, 350 (5th Cir.), *cert. denied,* 422 U.S. 1024, 95 S.Ct. 2619, 45 L.Ed.2d 682 (1975). When a "fact is not *necessarily* determined in a former trial, the possibility that it may have been does not prevent reexamination of the issue." *Adams v. United States,* 287 F.2d 701, 705 (5th Cir.1961).

We are instructed by the Supreme Court to apply collateral estoppel with realism and rationality. "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose

from consideration.'" *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76.

Judge Wisdom set out a straightforward two step inquiry for collateral estoppel analysis in *United States v. Levy,* 803 F.2d 1390, 1398–99 (5th Cir.1986). "The court must first determine what facts were necessarily decided in the first trial ... us[ing] 'realism and rationality.' ... [T]he court must then assess whether the government is attempting to relitigate those facts in the second proceeding." *Id.*

█ Our analysis is therefore primarily factual, determining whether a rational jury could have found a change in De La Rosa's state of mind between firing the shot which killed Rodriguez and firing the shot which killed Lee.[7] The relevant inquiry in both cases, due to the State's use of transferred intent, is what De La Rosa's state of mind was toward Lee at two different points in time. In other words, whether De La Rosa fired at Lee with the intent to kill Lee once with adequate cause for sudden passion and once without adequate cause for sudden passion. As we stated in *United States v. Mock,* 604 F.2d 341, 343 (5th Cir.1979), "[i]n principle, the law of collateral estoppel is clear, in application, it can be a slippery concept indeed." The path upon which we are about to depart is indeed slippery.[8]

## III.

### The Shootist

De La Rosa claimed he entered the Astro Lounge in order to sell his pick-up truck to the owner of the bar. He stated that he removed the pistol from the glove compartment and put it in his pocket while cleaning out the truck that morning. The owner of the bar was not present and De La Rosa decided to wait for him. When Joe Lee, Jr. and his friend Juan Mata entered the bar

---

6. The Fifth Amendment guarantee against double jeopardy is enforceable against the states as a component of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

7. We are unable to determine whether Lee or Rodriguez was shot first. The State argues that the jury could have decided Lee was shot first

and then De La Rosa changed his state of mind and shot Rodriguez.

8. The analysis is complicated by the use of transferred intent and the melee of violence and multitude of actors in the Astro Lounge in December 1981.

through the rear door, De La Rosa left to avoid any trouble.

Later that afternoon De La Rosa returned to the bar for the stated purpose of seeing if the owner had returned. De La Rosa testified that when he returned to the bar he was threatened by Lee who said he would kill De La Rosa. As Lee said this, Lee began to rise from his chair with his arms near his side. No one else heard Lee threaten De La Rosa. Because of Lee's shooting of De La Rosa's daughter, physical attacks on De La Rosa, and other violent acts of which De La Rosa was aware, De La Rosa alleges he was in reasonable fear for his life.[9] De La Rosa argues that Lee's words and acts, when combined with Lee's violent nature, intensified his fear to a level of terror which was adequate cause for the jury to find sudden passion. De La Rosa then pulled his gun from his pocket and fired in Lee's direction from approximately eight feet away.

The number of shots De La Rosa fired is in dispute. De La Rosa claims he fired only one shot. He claims a second shot was fired during the ensuing struggle when the gun was pointed at the ceiling. The Rodriguez boy's aunt recalled hearing shots but does not recall how many. Juan Mata testified that De La Rosa fired a total of three shots, two before the struggle, and one during the struggle.

Juan Mata who was sitting close to Lee, rushed at De La Rosa when De La Rosa produced the gun. Mata began struggling with De La Rosa over the gun and Lee joined in the struggle. The Rodriguez boy's aunt returned to the barroom, dragged the boy behind the bar, and entered the fray striking De La Rosa with a cue stick. Mata obtained possession of the gun and shot De La Rosa two times underneath the pool table. Mata went around the pool table, pointed the gun at De La Rosa's head, and pulled the trigger two more times, but the gun did not fire. Mata struck De La Rosa over the head with the

butt end of the gun. With Lee and the Rodriguez boy dead on the floor, Mata peacefully left the bar.

From the testimony we can conclude that a total of five shots were fired. De La Rosa entered the bar and fired two shots at Lee. Mata and Lee rushed at De La Rosa and struggled over the gun. A third shot was fired during the struggle. Mata took the gun from De La Rosa and shot him twice. He tried to shoot De La Rosa again, but the gun would not fire, so he struck De La Rosa in the head with the gun.

### Irreconcilable Differences

■ The State now contends that the jury in the Rodriguez case could have found that the first shot struck Lee and the second shot was fired at Lee out of sudden passion resulting from the struggle but killed Rodriguez. This is contrary to the position taken by the State during the Rodriguez trial and is an improper basis for sudden passion under Texas law.

The State argued at the Rodriguez trial that the first shot struck Rodriguez. In support of this argument the State offered the testimony of Rodriguez's aunt that when she came back into the bar after hearing the shots, she saw *a man standing* in the door with a gun in his hand and that John David collapsed into her arms (implying he was shot before the struggle). She then dragged him over behind the bar to protect him from further injury and joined in the struggle. Tony Mendoza, another patron in the bar, testified that when the first shot went off he saw Juan Mata moving toward De La Rosa and the little boy falling down. He thought that Mata had knocked him down on his way toward De La Rosa. During the struggle between Mata, Lee, and De La Rosa, Mendoza saw the boy's aunt already dragging him behind the bar. Although Mata did not know when Lee was hit or when the boy was hit, he testified that De La Rosa shot three times, twice before he got to him and once

---

**9.** De La Rosa testified that in addition to shooting his daughter, Lee had shot other people and had "beaten up" De La Rosa several times before the time he killed De La Rosa's daughter.

This was the first day De La Rosa had seen Lee since Lee was released on bond pending trial for shooting De La Rosa's daughter.

during the struggle. Mata further testified that during the struggle, the boy's aunt had a cue stick and was striking and yelling at De La Rosa. Dr. Rupp, the coroner, testified that, in his opinion, Rodriguez was probably standing upright and was shot in the back. The State used this testimony to bolster their theory during final argument that the first shot fired by De La Rosa struck Rodriguez and the second shot struck Lee.

De La Rosa argued that he acted in self-defense and that the shot that killed Rodriguez may have been fired by Mata when Mata shot De La Rosa from underneath the pool table. At no time did De La Rosa or the State argue that the struggle which ensued after De La Rosa initiated the attack on Lee was the cause of sudden passion.

The State offered virtually identical evidence at De La Rosa's trial for the murder of Lee. The State made no effort to distinguish De La Rosa's state of mind between the two shootings nor was the jury ever informed of the results in the prior trial.

De La Rosa appealed both convictions. In the Rodriguez shooting, the Texas Court of Appeals affirmed De La Rosa's conviction for voluntary manslaughter, holding that there was sufficient evidence that De La Rosa fired the shot that killed Rodriguez.[10] The Court of Appeals emphasized testimony that Rodriguez was falling to the ground while Mata rushed toward De La Rosa and that the boy's aunt saw "a man standing in the doorway with a gun in his hand" after Rodriguez collapsed in her arms.[11]

## IV.

### Altered States (of mind)

The State's position on appeal is that the jury in the Rodriguez trial did not necessarily decide De La Rosa's state of mind when he fired the shot that killed Lee. It contends that the jury in the Rodriguez case could have found De La Rosa shot at Lee and killed Rodriguez out of the sudden passion resulting from the struggle over the gun, without deciding De La Rosa's state of mind when he shot at and killed Lee.[12]

The State's position is flawed in three respects: (i) the record reflects no evidence or argument to the jury to support a conclusion that De La Rosa's state of mind changed; (ii) such a verdict would be contrary to Texas law and could not have been upheld on appeal; and (iii) the two criminal acts evolved from the same criminal episode without sufficient separation to base a finding of changed intent.

In order to distinguish the two states of mind, the State relies on our holding in *Douthit v. Estelle,* 540 F.2d 800 (5th Cir. 1976). In *Douthit* the defendant was indicted separately for raping a woman in three different counties during a twenty-two hour period. The defendant was first tried and acquitted of the third rape and contended that the acquittal collaterally estopped the State from prosecuting him for rape in the first assault. A realistic and practical inquiry into the jury's verdict demonstrated that the verdict could have been based on a change in the woman's

---

**10.** The Texas Court of Appeals "view[ed] the evidence in the light most favorable to the jury verdict, and [could] ... uphold the conviction only if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *De La Rosa v. State,* 660 S.W.2d 642, 644 (Tex.App.—Corpus Christi 1983) (Rodriguez Trial), citing *Wilson v. State,* 654 S.W.2d 465 (Tex.Crim.App.1983).

**11.** "[T]he testimony of Antonio Mendoza [one of the patrons in the bar] shows that Melba [the boy's aunt] was already pulling John David to the back of the bar during the struggle between appellant, Joe Lee, and Juan Mata. Melba testified ... that John David fell into her arms, and

that she then dragged him to the back of the bar. If the testimony of Mendoza and Melba Ramos was believed by the jury, it is obvious that the shot which hit John David was fired before Joe Lee collapsed on the floor, and before Juan Mata obtained possession of the gun." *Id.*

**12.** This court has not been presented with the usual "supply of ingenious semantic hypotheticals emanat[ing] from the supplications of defendants." *Johnson v. Estelle,* 506 F.2d at 352. Instead, we are presented with this lone alternative basis on which the jury could have based its finding of adequate cause.

consent between the different occurrences. The defendant offered evidence that the woman consented to the third act which was not present at the first abduction. Thus, the jury's acquittal of rape on the third occasion did not necessarily decide the woman's consent at the first rape because sufficient evidence was introduced to support a change in the victim's consent between the criminal acts. The criminal acts in *Douthit* were removed from each other by considerable time, distance, and circumstances which are not present here.

### Absence of Malice

■ We addressed a more analogous set of facts in *Green v. Estelle*, 601 F.2d 877 (5th Cir.1979), where two boys were abducted and placed in the trunk of a car and were both killed by a volley of gunfire into the trunk. On the basis of collateral estoppel, we held that the defendant's conviction of murder *without* malice for one of the killings precluded, on the basis of collateral estoppel, a conviction for murder *with* malice for killing the second boy. The record showed that the two victims were killed almost simultaneously and no one was able to tell from the evidence which boy was wounded first or which boy died first, *id.* at 879. No rational trier of fact could have found a change in the defendant's state of mind in that time frame under those circumstances.

*Green* is controlling on the instant case. Both Lee and Rodriguez were killed as a result of two shots fired by De La Rosa one after the other. The evidence does not show which victim was shot first and, if anything, supports the State's position taken at the Rodriguez trial, that the first shot killed Rodriguez. There was similarly no legally sufficient evidence indicating a change in Lee's state of mind between these two near simultaneous shootings.[13] His conduct in the death of both victims

was the same, De La Rosa fired at Lee with the intent to kill Lee.

The Texas Court of Appeals reached a similar conclusion in *Garcia v. State*, 718 S.W.2d 785 (Tex.App.—Corpus Christi 1986). A street brawl of one to two hundred people and nine to fifteen police officers evolved from the violently opposed arrest of Garcia's brother and sister. Two police officers chased another subject near a residence and were standing next to each other when Garcia shot one of them with a shotgun. Officer Ayala testified that he heard a shot and saw his partner fall to the ground. He turned and saw Garcia with a shotgun and heard a "clack-clack" as Garcia pumped the shotgun and fired again at him. Ayala was able to jump behind a wall and out of the line of fire. Garcia was tried for capital murder for shooting a police officer and was convicted of voluntary manslaughter. Garcia challenged his indictment for attempted capital murder of the second police officer who was standing next to the first and was shot at a couple of seconds later. The court relied on *Green* in finding that the two acts were separate criminal acts but involved one state of mind. The State failed to introduce sufficient evidence on which a reasonable jury could find the defendant altered his state of mind.

### V.

### The Verdict

Having determined that the jury could not have found that De La Rosa altered his state of mind, we now turn to deciding if the jury could have found a sufficient intervening act on which to find adequate cause for sudden passion.

■ The jury returned a general verdict, so it is necessary for this court to examine

---

**13.** We reaffirm what we stated in footnote 15 in *Douthit.* Collateral estoppel is not automatically found where two distinct crimes arise out of the same transaction, nor is collateral estoppel automatically not found where two crimes arise out of different times and places.

The relevant inquiry here remains whether sufficient evidence exists for a rational trier of

fact to find that the defendant's state of mind did change between the criminal acts. *Compare United States v. Smith,* 470 F.2d 1299 (5th Cir.), *cert. denied,* 411 U.S. 952, 93 S.Ct. 1929, 36 L.Ed.2d 415 (1973), *with Blackburn v. Cross,* 510 F.2d 1014 (5th Cir.1975).

the entire record to determine whether a rational jury could have grounded De La Rosa's conviction of voluntary manslaughter, and therefore acquittal of murder,[14] upon an issue other than De La Rosa's state of mind for the entire shooting incident. *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76; *Johnson v. Estelle,* 506 F.2d at 352. A special verdict would prevent, or at least help prevent, the necessity of a reviewing court attempting to deduce the rationale underlying the first jury's determination; unfortunately, we are not, and perhaps may not ever be,[15] provided with that luxury.

■ We must take the jury at their word. By their verdict they found adequate cause existed for sudden passion when De La Rosa shot at Lee and killed Rodriguez. We are bound by that finding. *Green v. Estelle,* 601 F.2d 877, 878–79 and n. 4 (5th Cir.1979). The Texas Court of Appeals held that there was sufficient evidence to affirm the jury verdict. Being required to accept the court's holding that adequate cause existed we must ascertain whether the jury necessarily determined that adequate cause existed at the time De La Rosa fired the shot that killed Lee.

### The Last Tango in Corpus

In order to uphold De La Rosa's murder conviction of Lee, we would have to make both of the following conclusions on De La Rosa's acts and intent. First, that the jury could have determined that De La Rosa entered the bar with premeditated intent to kill Lee, fired at Lee, and killed him; and second, that Lee and Mata rushed De La

Rosa and that this rush, which was provoked by De La Rosa's murderous acts, created terror in De La Rosa which caused him to fire a second shot at Lee intending to kill him, but killing Rodriguez instead. This we cannot do. Not only would this contradict the evidence offered and position taken by the State in the Rodriguez trial, it could not have been upheld as a proper finding of adequate cause by the Texas Court of Appeals.

■ Under Texas law, a defendant cannot use an assault which the defendant provoked to reduce his state of mind when his initial provocation was made with premeditated intent to kill. *Mickle v. State,* 88 Tx.Cr. 405, 227 S.W. 491 (Tex.Crim.App. 1921); *Berry v. State,* 80 Tx.Cr. 87, 188 S.W. 997, 998–99 (Tex.Crim.App.1916) (citing cases); *Tollett v. State,* 55 S.W. 573 (Tex.Crim.App.1900); *Goff v. State,* 681 S.W.2d 619 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd.) Even "where the defendant kills in response to a violent blow ... he may not have his homicide reduced to voluntary manslaughter if he himself by his own prior conduct (as by vigorously starting the fracas) was responsible for that violent blow". LaFave & Scott, Criminal Law Hornbook at 574 (1972).

■ Although in our concept of double jeopardy the law must recognize that a jury can act in an irrational manner—even to the point of ignoring the law or the Judge's instructions in a blend of undecipherable mercy—we must proceed on the basis that the jury in the first trial acted in

---

14. When a defendant is convicted of a lesser included offense of the one he is indicted for, the verdict necessarily implies an acquittal of the greater offense. *Davis v. Herring,* 800 F.2d 513, 519 (5th Cir.1986); *Daniels v. State,* 464 S.W.2d 368 (Tex.Crim.App.1971).

15. In *United States v. James,* 432 F.2d 303, 307 (5th Cir.1970), *cert. denied,* 403 U.S. 906, 91 S.Ct. 2214, 29 L.Ed.2d 682 (1971), we approved the First Circuit's prohibition on the use of special interrogatories in criminal cases in order to assure juries freedom and control of their verdict apart from judicial pressures.

To ask the jury special questions might be said to infringe on its power to deliberate free

from legal fetters; on its power to arrive at a general verdict without having to support it with reasons or by a report of its deliberations; and on its power to follow or not to follow the instructions of the court. Moreover, any abridgement or modification of this institution would partly restrict its historic function of tempering rules of law by common sense brought to bear upon the facts of a specific case.

*United States v. Spock,* 416 F.2d 165 (1st Cir. 1969), quoting *United States v. Gernie,* 252 F.2d 664 (2d Cir.1958), *cert. denied,* 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958).

a legally correct manner. Otherwise, the ultimate issue of fact decided by any jury could be second guessed and we could never apply the principle of collateral estoppel. *See Green v. Estelle,* 601 F.2d at 878–79 and n. 4. Therefore, the sudden passion which the Rodriguez jury found to have reduced De La Rosa's acts to voluntary manslaughter did not arise during the struggle provoked by De La Rosa's actions with murderous intent. The only possible cause on which the Rodriguez jury could base De La Rosa's sudden passion was the terror evoked by Lee's threat to kill De La Rosa compounded by Lee rising from his chair and De La Rosa's knowledge of Lee's violent nature.[16] This must have been the conclusion reached by the Rodriguez jury because it is the only conclusion legally supported by the evidence presented to them.

### VI.

In light of the pleadings, evidence, charge to the jury, and arguments of counsel, we have determined that the jury verdict in the Rodriguez case, under a theory of transferred intent, necessarily determined that De La Rosa was acting as a result of sudden passion arising from an adequate cause in firing the volley of shots which killed both victims. The State is therefore collaterally estopped under the principles of *Ashe v. Swenson* from relitigating the issue of De La Rosa's reduced state of mind for the murder of Lee. De La Rosa's conviction for any offense greater than voluntary manslaughter for the shooting of Lee was barred by collateral estoppel; therefore, the verdict in the Lee trial was unauthorized by law and the writ is granted unless the State resentences or retries De La Rosa within 120 days.[17]

REVERSED

---

16. Fear, in and of itself is not adequate cause under Texas law, but when combined with other circumstances such as defendant's knowledge of the deceased's propensity for violence and apparent aggression, a reasonable jury could find that the defendant's fear rose to the level of terror. *Daniels v. State,* 645 S.W.2d 459, 460 (Tex.Crim.App.1983).

17. As a matter of federal constitutional law, De La Rosa's sentence for the murder of Lee violates the collateral estoppel principles of double jeopardy under the Fifth Amendment. "It appears that, under Texas law, an error in sentencing proceedings before a jury requires the state Appellate Court to reverse the entire conviction,

not merely to remand for resentencing." *Brown v. Estelle,* 591 F.2d 1207 (5th Cir.1979). *See, Bogany v. State,* 661 S.W.2d 957 (Tex.Crim. App.1983); *Thomas v. State,* 589 S.W.2d 129 (Tex.Crim.App.1979); *Hickman v. State,* 548 S.W.2d 736 (Tex.Crim.App.1977); *Chaney v. State,* 133 Tex.Cr.R. 517, 112 S.W.2d 464 (1937). *See also Stell v. State,* 662 S.W.2d 96, 101 (Tex. App.—Houston [1st Dist.] 1984, writ granted) (requiring reindictment for new trial on lesser included offense). The process by which the state elects, or is required by its law, to reform De La Rosa's sentence is a matter of state law. Such election is properly left to the state of Texas.