HAWKINS, Presiding Justice,
for the Court:
Samuel Wesley Dixon has appealed from his conviction in the circuit court of Leake County of kidnapping Ruby Dean Griffin and sentence to serve 30 years.
We address only one issue on this appeal, Dixon’s constitutional double jeopardy right. Having been previously acquitted in the same court of the crime of murder of Ruby Dean Griffin while in the commission of rape on the same night in the same series of acts upon which his conviction of kidnapping was based, we reverse and render judgment here for the accused.
FACTS
Ruby Dean Griffin, a 21-year-old black woman, lived with her parents, Mr. and Mrs. Thurl Griffin, on a graveled road about a mile North of Carthage. Mrs. Griffin was confined to a wheelchair. Ruby went to her room at approximately 7:00 on the evening of Thursday, March 28, 1985, and this was the last time her father saw her alive. The next morning she was found on a dirt road Northeast of Carthage just South of Highway 25. She had on knee socks, but no other clothes from her waist down. A scarf was around her neck. There was a cut on her throat'. She was muddy from her knees down. She was taken by ambulance to the Leake County Memorial Hospital where she died shortly after arrival.
Sheriff Joe Mack Thaggard noticed tracks on the road where a motor vehicle had gone into a ditch a short distance from the Griffin home. He also saw blood and red and blue barrettes (combs) in the road. He also learned from James Dixon, an uncle of Samuel Wesley’s, that he had the previous night pulled Samuel Wesley’s pickup truck out of the ditch at that location. Later that day Dixon was stopped, questioned and arrested. Female panties were found in the pickup.
Dixon gave a confession to the sheriff which the sheriff wrote down as follows:
Samuel Dixon states that on 3-28-85 that he was driving east from Red War-ter [sic] School on a Gravel Rd. to his mother’s, and he hit a girl with his truck and that he went in the Ditch, he put the girl in the bushes and his friend Freddie Wilson and wife Elenor Wilson come by and took me to James Dixon and James Dixon came back and pulled me out of the ditch. I went on to my mothers and told her I got out of the ditch. I went back and got the girl out of the bushes and put her in my truck in the back. I through [sic] one of her shoes in the bushes there. I took the girl up on the Conway Road at the Norris Carson Sign on 35 North, and Raped her in the bed of my Truck. I through [sic] her other shoe out there at the sign on 35 north. I took a hatchett in the back of my truck and cut her throat on Conway Rd. I took the girl back up 25 highway on a dirt road and through [sic] her out some time before 12:00 p.m. I left and went up on the square. I then went and washed my truck, and I had the girls panties in my truck and I carried her pants to where I live and put them in the trash. [Underlined portions omitted during second trial]
Exhibit 3, Vol. II, p. 72 (first case); Exhibit 2, Vol. II, p. 224 (second case; omits rape and murder portions).
From the map introduced at trial it appears the place where the truck was in the ditch is approximately two miles south *953 from the Norris Carson sign on Conway Road where Dixon confessed taking Ruby Dean, and the location on the dirt road where he carried her body is at least two miles distance from the North Carson sign (probably four or five miles distance by road).
Dixon was indicted by the Leake County grand jury on April 23, 1985, for capital murder committed while committing the crime of rape, in violation of Miss.Code Ann. § 97-3-19(2)(e). He was tried in May and following a verdict of the jury of not guilty, a judgment of acquittal was entered by the court on May 8, 1985.
On August 5, 1985, the grand jury returned an indictment against Dixon of felo-niously confining and kidnapping Ruby Dean Griffin against her will, in violation of Miss.Code Ann. § 97-3-53.
Dixon moved to dismiss the indictment on the ground that his Constitutional right against being tried twice for the same crime was being violated, and also assigning collateral estoppel, 5th Amendment, U.S. Constitution: Section 22, Article 3, Mississippi Constitution. The court overruled this motion. The court overruled defense motion for a directed verdict and for a peremptory instruction.
During the second trial in November, 1985, the court excised from Dixon’s confession the following clause and sentence:
[A]nd raped her in the bed of my truck.... I took a hatchett in the back of my truck and cut her throat on Conway Rd.
Also, in the second trial no testimony was given about Ruby Dean having been raped or murdered. Both the sheriff and ambulance attendant did testify, however, about seeing the throat wound.
In corroboration of Dixon’s confession, in both trials Ruby Dean’s shoes were offered in evidence. One shoe was found in the bushes where the truck had run in the ditch, and the other was found near the Norris Carson sign.
LAW
An entirely different question would be presented in this case if Dixon had been convicted of murder in the first trial. Hughes v. State, 401 So.2d 1100 (Miss.1981). He was acquitted, however.
The question therefore becomes — as Justice Robertson observed in Sanders v. State, 429 So.2d 245 (Miss.1983) — whether the only rational explanation for the jury verdict in the first case was the conclusion Dixon was not guilty of kidnapping, either. From the facts adduced at the first trial could a rational jury have found Dixon not guilty of murder/rape without necessarily also returning a not guilty verdict of the pre-murder kidnapping? Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475-476 (1970); Harden v. State, 460 So.2d 1194 (Miss.1984); Sanders v. State, supra. The conclusion we reach in this case does not necessarily mean we would reach the same conclusion in every case in which a murder was preceded by a kidnapping of the victim. “[T]he burden is upon the defendant to show that the jury’s verdict in the prior trial necessarily decided the issues raised in the second prosecution.” United States v. Gugliaro, 501 F.2d 68, 70 (2nd Cir.1974). See United States v. Giarratano, 622 F.2d 153 (5th Cir.1980). It is the duty and function of the court to examine the facts presented in the particular case. Dixon has met that burden.
Essentially the same evidence was introduced in both of Dixon’s trials:
1. Ruby Dean’s hair comb and one of her shoes which was found at the location where Dixon said he hit her with his truck, and ran into the ditch.
2. The other shoe found at the Norris Carson sign.
3. A throat wound noticed by the sheriff and the ambulance driver when Ruby Dean was found on the dirt road.
4. A pair of woman’s panties found in Dixon’s truck.
5. There was no other person criminally involved in any aspect of the crime.
6. Dixon’s confession that he:
a. Struck Ruby Dean with his truck and drove in a ditch.
b. Hid the battered girl in the bushes just off the road.
*954 c. Got the truck pulled out.
d. Returned later alone and got Ruby Dean out of the bushes and put her in the bed of his pickup.
e. Drove approximately two miles to Norris Carson sign and threw a shoe out.
f. Drove at least two more miles and dumped her out on a dirt road.
The only evidentiary difference between the first and second trial was that no evidence was offered on the second trial that Ruby Dean was raped and murdered, the part of Dixon’s confession that he raped her and cut her throat with a hatchett having been excised.
That Ruby Dean was in fact murdered is undisputed. That she also had engaged in sexual intercourse is also undisputed. Dixon either committed the murder or he did not. Furthermore, that he was the only person involved with Ruby Dean in the acts set out in his confession is undisputed.
When the jury found him not guilty of murder did they also necessarily find that he was not guilty of kidnapping her as well?
If we answered this question in the negative, we would be saying that the jury in finding Dixon was not guilty of murder could rationally have believed Dixon struck the girl with his truck, put her in the bushes, later returned and drove two miles where some unknown third party cut her throat and raped her, only to have Dixon cooperatively haul Ruby Dean off another two miles or so and throw her mangled body off onto a dirt road.
Obviously, no rational jury could reach such a conclusion. The proof of events in the two trials are so inextricably interwoven we must conclude that when the first jury found Dixon not guilty of murder they necessarily rejected Dixon’s entire confession and would likewise have found him not guilty of kidnapping Ruby Dean. See also: People v. Rolston, 51 Mich.App. 146, 214 N.W.2d 894 (1974).
In oral argument of this case, the State confessed error in the introduction into evidence at the second trial of the throat wound. We permitted the State to file a supplemental brief in which they argue first that it was harmless, but if reversal is required, that we simply reverse and remand, and not apply collateral estoppel. Unfortunately for the State’s position, the question is not what proof the State possibly could have offered in the first trial on murder so as to leave the State free to subsequently prosecute on a kidnapping charge in event of a not guilty verdict. The question is what evidence was in fact offered in the first trial, and then again in the second trial. Judge Wisdom set out a straightforward two step inquiry for collateral estoppel analysis in United States v. Levy, 803 F.2d 1390, 1398-99 (5th Cir.1986). “The court must first determine what facts were necessarily decided in the first trial ... us[ing] ‘realism and rationality.’ ... [T]he court must then assess whether the government is attempting to relitigate those facts in the second proceeding.” De La Rosa v. Lynaugh, 817 F.2d 259, 263 (5th Cir.1987).
As we have noted, the decisions of the United States Supreme Court and this Court, under the facts of this case, require reversal and discharge the defendant.
REVERSED AND APPELLANT DISCHARGED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.